**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC | Case No.: 26-mc-00099-RJL-ZMF<br><br>**ORAL ARGUMENT REQUESTED** |
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC<br><br>Defendant. | Underlying action:<br><br>United States District Court for the District of Oregon, Eugene Division<br><br>Case No. 6:25-cv-01869-MC |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF NON-PARTY HEIDARPOUR LAW FIRM, PLLC'S MOTION TO QUASH A SUBPOENA**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

I. HLF APPROPRIATELY SOUGHT EMERGENCY RELIEF .......... 2

II. FREEWAY'S DOCUMENT REQUESTS SHOULD BE QUASHED .......... 4

A. Freeway Should Seek Discovery from Plaintiff or Other Third Parties, Not HLF .......... 5

B. The Subpoena Seeks Information Irrelevant to the Oregon Action .......... 7

C. The Requests Seek Privileged Information and Are Disproportionate to the Needs of This Case .......... 12

III. THE DEPOSITION SHOULD BE QUASHED .......... 14

IV. IN THE ALTERNATIVE, THE COURT SHOULD DEFER RULING UNTIL THE DISTRICT OF OREGON DECIDES THE PENDING MOTIONS .......... 16

V. HLF IS ENTITLED TO ITS COSTS AND FEES UNDER RULE 45(D)(1) .......... 16

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apollo Grp., Inc. v. U.S. Dep't of Educ. (In re Apollo Grp., Inc.)*,
329 F. App'x 283 (D.C. Cir. 2009)....11

*ASPCA v. Ringling Bros. & Barnum & Bailey Circus*,
233 F.R.D. 209 (D.D.C. 2006)....7

*Burford v. Acct. Prac. Sales, Inc.*,
786 F.3d 582 (7th Cir. 2015)....10

*Burlodge v. Standex Int'l Corp.*,
257 F.R.D. 12 (D.D.C. 2009)....14

*Coleman v. Dist. of Columbia*,
284 F.R.D. 16 (D.D.C. 2012)....5, 14

*Convertino v. U.S. Dep't of Just.*,
769 F. Supp. 2d 139 (D.D.C. 2011)....2

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)....10

*Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*,
339 F.R.D. 334 (D.D.C. 2021)....14

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Transit Auth.*,
242 F.R.D. 139 (D.D.C. 2007)....14

*Edwards v. Gordon & Co.*,
94 F.R.D. 584 (D.D.C. 1982)....13, 17

*Flanagan v. Wyndham Int'l, Inc.*,
231 F.R.D. 98 (D.D.C. 2005)....16

*FMC Corp. v. U.S. EPA*,
279 F.R.D. 14 (D.D.C. 2011)....10

*Hesco Bastion Ltd. v. Greenberg Traurig LLP*,
No. 09-0357, 2009 WL 5216932 (D.D.C. Dec. 23, 2009)....10

*Jiang v. NVIDIA Corp.*,
2026 WL 962496 (D.D.C. Apr. 9, 2026)....7, 11, 15

*Pederson v. Preston*,
250 F.R.D. 61 (D.D.C. 2008) ... 11

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ... 9

*Slevin v. AB Hollywood, LLC*,
No. 3:23-cv-01404, 2026 WL 892186 (D. Or. Mar. 31, 2026) ... 11

*Sourgoutsis v. U.S. Capitol Police*,
323 F.R.D. 100 (D.D.C. 2017) ... 5

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
276 F.R.D. 376 (D.D.C. 2011) ... 16

*United States v. All Assets Held in Acct. No. XXXXXXXX*,
No. 13-1832, 2019 WL 95605 (D.D.C. Jan. 3, 2019) ... 15

*United States v. Am. Tel. & Tel. Co.*,
642 F.2d 1285 (D.C. Cir. 1980) ... 13

*United States v. Gonzalez-Lopez*,
548 U.S. 140 (2006) ... 2

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ... 10

*Wilson v. Freeway Ins. Servs. of Am., LLC*,
No. 6:25-cv-01869-MC, Dkt. No. 29 (D. Or. 2025) ... 7, 9

*Wilson v. PacifiCorp*,
No. 6:24-cv-01956-AA, Dkt. No. 47 (D. Or. June 9, 2026) ... 2, 12, 17

## PRELIMINARY STATEMENT

Freeway's Opposition confirms that the Subpoena must be quashed. Faced with multiple arguments showing the Subpoena's deficiencies, Freeway overlooks arguments and governing case law, mischaracterizes the record, and substitutes hyperbole for legal analysis. Freeway is not using the Subpoena to litigate the underlying case but to conduct a freewheeling investigation so it can bring "an affirmative action against HLF." *See* Ex. G at 22. This is improper.

As an initial matter, Freeway's Opposition is premised on allegations of misconduct, but none are supported by evidence. Freeway asserts that HLF sits "at the center" of a predatory litigation enterprise, Opp. at 1; that it runs a "sue-and-settle mill," *id.* at 2, 4; that Mr. Wilson and his counsel "weaponize Rule 23" to extract "extortionate," "better-than-the-statute" settlements while "absent class members recover nothing," *id.* at 1, 4–5; that HLF's lawyers "pocket[] millions" while leaving clients with "a pittance," *id.* at 5; and that HLF "manufactures" claims, *id.* at 2, 20. It is a serious matter to accuse members of the bar of criminal and unethical conduct. Freeway's willingness to do so without supporting evidence is unacceptable.

Freeway also misstates the record. For example, Freeway argues that HLF "has a 30% financial interest" in the proceeds of the underlying litigation, but in truth, HLF receives 30% of any attorneys' fees award, which is a standard referral fee. *See* Supp. Laroche Decl., Ex. 1 at 1.[1] Freeway argues that Mr. Wilson has never "secured recovery for a class or even sought certification," Opp. at 1, but in truth, he has a motion pending to approve a class settlement in *Wilson v. PacifiCorp*, No. 6:24-cv-01956-AA, Dkt. No. 47 (D. Or. June 9, 2026). Freeway argues that HLF "manufactured an emergency motion," Opp. at 17–18, but in truth, HLF repeatedly asked

[1] Freeway represented that it was submitting a copy of the co-counsel engagement letter as Exhibit 9 to the Watstein Declaration, but the exhibit is blank. HLF attaches a copy of the engagement letter as Exhibit 1 to the Supplemental Declaration of Matthew Laroche.

to stay the Subpoena, which Freeway never agreed to do without additional conditions. *See infra* Part I.

Freeway's strategy is to throw mud at the wall and see what sticks. Freeway even suggests that HLF's decision to retain undersigned counsel is itself evidence of wrongdoing. Opp. at 1; Ex. F at 1. That argument is unbecoming of Freeway and its counsel. Of course, HLF has a constitutional right to retain counsel, and the exercise of that right is "certainly not a justification for suspicion." *Convertino v. U.S. Dep't of Just.*, 769 F. Supp. 2d 139, 149 (D.D.C. 2011); *see United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006). If anything, Freeway's argument cuts the other way—having accused HLF of lawyer-driven fraud, HLF understandably retained counsel to defend its reputation.

Regardless, the Opposition confirms that the Subpoena fails on its own terms. Freeway argues that the requested information is not available through Mr. Wilson, but Freeway has not even deposed Mr. Wilson in the underlying case or sought to compel him to produce anything. Freeway's relevance arguments—that it needs discovery to test speculative theories about class certification or for sanctions—reinforce that it is conducting a fishing expedition untethered to the facts or law. And Freeway's arguments on burden and privilege are undercut by its requests that HLF produce information about nearly 100 cases and forensic information reflecting how the firm screened, investigated, and evaluated potential claims.

The Court should quash the Subpoena.

## ARGUMENT

### I. HLF APPROPRIATELY SOUGHT EMERGENCY RELIEF

Freeway's assertion that HLF "manufactured" an "emergency" to stymie discovery and impact counsel's trial schedule is simply incorrect. Opp. at 11–12. While Freeway is not asking the Court to revisit the stay, Freeway's arguments—contained in its June 29 "Notice" and repeated

in its Opposition—are misleading and mischaracterize the record. At bottom, HLF moved for an immediate stay because Freeway would not agree to one.

From the outset of the meet and confer process, HLF sought to avoid emergency motion practice by asking Freeway to defer the Subpoena's compliance deadline until the pending motions in the Oregon Action were decided or, at a minimum, until any motion to quash was resolved. Dkt. No. 4, Ex. 1 at 23–24. HLF raised the issue during the parties' initial conferral on May 29, 2026, and Freeway refused. HLF continued to press for a standstill in the parties' ensuing correspondence. *See* Ex. G at 20–22.

After the parties agreed to extend the compliance deadlines to June 26, HLF pressed the stay issue again on the parties' June 23 call, in a follow-up email that same day, and in another email on June 24, asking Freeway's position on whether HLF would need to seek an immediate stay if it filed a motion to quash. Ex. G at 5–6. As HLF explained, it "would like to avoid rushing to court to stay the deposition" and was "hopeful you would agree that, by filing the motion to quash, we would not need to separately seek an immediate stay of the deposition." *Id*. HLF added that it believed "the court would appreciate not having to address an emergency motion to stay in addition to the motion to quash." *Id.* at 6.

Freeway never agreed. Instead, on June 24, the day HLF filed its motion, Freeway stated that it would defer the deposition only if HLF first supplied additional information, conditioning any standstill on HLF addressing the engagement letter in the underlying action. *See* Ex. G at 3. HLF responded that Freeway's position was inappropriate, HLF was not willing to provide the requested information (which was not called for by the Subpoena), the parties accordingly had no agreement, and HLF would move for an immediate stay. Ex. G at 2. HLF filed its motion later that day. *See* Dkt. No. 1.

After HLF filed, Freeway objected that there was no emergency. HLF responded that same day, explaining that it understood the parties had no agreement on a stay and had filed only to protect its client against the looming deadline, which was two days away. Dkt. No. 4, Ex. 1 at 2. In that same email, HLF offered to defuse the situation: if Freeway did not oppose the stay "without further concession from HLF," HLF was "[h]appy to so inform the Court and propose a briefing schedule." Dkt. No. 4, Ex. 1 at 2. Freeway never responded. The next day, the Court granted the requested stay. HLF immediately notified Freeway and asked whether Freeway wished to work out a briefing schedule. *Id*. at 1. Again, Freeway did not respond.

Instead, four days later, on June 29, Freeway filed a "Notice" repeating many of the same misleading claims that are in its Opposition. *See* Dkt. No. 3. The Notice states that Freeway offered to extend the deposition "with no conditions at all," but concedes in a footnote that the offer was conditioned on HLF providing additional information. *Id*. at 1. The Notice also omits what HLF had proposed the day it filed: that the parties jointly inform the Court there was no need for an immediate stay and set a briefing schedule so long as Freeway did not oppose the stay "without further concessions from HLF." Dkt. No. 4, Ex. 1 at 1. The evident purpose of the Notice was to muddy the record and to preview arguments Freeway now repeats in its Opposition.

On this record, Freeway's claims of gamesmanship are disappointing and wrong. HLF asked, repeatedly and in writing, for the very relief the Court ultimately granted, and it moved only after Freeway refused to agree to any stay except on conditions to which Freeway had no entitlement. *See id*. The Court should maintain the stay.

## II. FREEWAY'S DOCUMENT REQUESTS SHOULD BE QUASHED

Freeway spends much of its Opposition claiming HLF is defrauding courts and weaponizing the class certification process. Opp. at 2–3, 5–6, 10–11, 13, 18, 20–22, 24, 29. Those accusations are false and unsupported by evidence, but they also are a sideshow. The resolution

of this motion is straightforward. Freeway cannot seek documents from a non-party law firm when it (i) has not sought those materials from the party in the underlying action; (ii) admits it is seeking materials to support separate proceedings against HLF having nothing to do with the claims or defenses in the underlying action; and (iii) continues to press for discovery about nearly 100 other matters that implicate privileged information.

Freeway has not cited a single case authorizing the broad-ranging discovery it seeks through the Subpoena. While Freeway argues that quashing a subpoena is an "extraordinary measure," even the case it cites for that proposition ***granted*** the motion to quash on relevance and undue burden grounds. Opp. at 12 (quoting *Sourgoutsis v. U.S. Capitol Police*, 323 F.R.D. 100, 105 (D.D.C. 2017)). Courts also heavily scrutinize discovery requests to lawyers and "the cards are stacked against the requesting party." Mot. at 14–15 (collecting cases). Freeway has not come close to justifying the extraordinary discovery it seeks.

### A. Freeway Should Seek Discovery from Plaintiff or Other Third Parties, Not HLF

Freeway does not dispute that the Subpoena must be quashed if it seeks information available through Mr. Wilson or other third parties. Yet, Freeway's Opposition confirms that it has not attempted to compel Mr. Wilson for this information, to depose him in this case, or sought data from third parties. This alone justifies quashing the Subpoena. *See, e.g.*, *Coleman v. Dist. of Columbia*, 284 F.R.D. 16, 19 (D.D.C. 2012) (quashing subpoena to counsel where the requesting party failed to compel a non-attorney witness before "jumping straight" to the attorney).

Instead, Freeway argues that it would be futile to seek discovery from Mr. Wilson, but nothing supports that claim. Freeway contends that HLF's engagement letter with Mr. Wilson allows HLF to settle claims without "Wilson's knowledge," so Mr. Wilson may not know what cases were settled. Opp. at 20. The engagement letter does not say that, and in any event, Mr.

Heidarpour submitted a sworn declaration that he obtains appropriate client authorization for settlements. Heidarpour Decl. ¶ 3. This case is a perfect example of that: Freeway offered to settle, and Wilson declined, as he (Wilson) explained in a sworn declaration. *See Wilson v. Freeway Ins. Servs. of Am., LLC*, No. 6:25-cv-01869-MC (D. Or. 2025), Dkt. No. 29 ¶ 25. Freeway also cites deposition testimony from an unrelated matter in which Mr. Wilson said he provided HLF access to his phone and could not remember to whom his cases were referred. Opp. at 20. But Mr. Wilson also testified that he maintains records of what was sent or received on his phone (Opp., Ex. 4 at 79:8–19) and still has access to his iCloud data (*id.* at 69:5–12). As to case referrals, Mr. Wilson stated that he works with "a group of attorneys" and was not certain at his deposition which of those attorneys worked on specific cases. Ex. D at 13:3–8. That is hardly evidence that phone data and case referral information is not available through Mr. Wilson, and Freeway provides no explanation for why it is not pressing Mr. Wilson for that information.

In fact, even if Mr. Wilson "could not" provide certain information at a deposition, that does not mean the information is unavailable through him. "Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." *ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006). Freeway's remedy is to seek discovery from Mr. Wilson and move to compel in the underlying action as necessary, not to immediately give up on that process and subpoena a non-party law firm. Freeway's approach has forced HLF to litigate in another federal district court that is not even overseeing the underlying action.

Freeway has not cited a single case authorizing discovery in these circumstances, and its attempts to distinguish HLF's authority are unpersuasive. Freeway argues about *Jiang v. NVIDIA*,

but HLF did not cite that case for this issue. *See Jiang v. NVIDIA Corp.*, 2026 WL 962496, at *6 (D.D.C. Apr. 9, 2026); *see also* Mot. at 19–20 (citing *Jiang* concerning fishing expeditions). Freeway tries to distinguish the remaining cases on the ground that it has "exhausted all other avenues" for discovery. Opp. at 16. But Freeway plainly has not done so—it never moved to compel Mr. Wilson for documents or compel his deposition. Nor does Freeway respond to HLF's argument that materials responsive to several of the requests (*see, e.g.*, RFP Nos. 4, 5, 6) could be obtained from third parties such as Apple and other data providers. Mot. at 16.

**B. The Subpoena Seeks Information Irrelevant to the Oregon Action**

Freeway does not dispute that its requested discovery has no relevance to the core issue in this case, whether Freeway had consent to send messages to Mr. Wilson's phone. Freeway's alternative justifications for discovery fail.

**1. The discovery is not relevant to class certification.** Freeway claims that the requested discovery—including information about "nearly 100 other cases"—is relevant to show potential conflicts between the class and Mr. Wilson, who Freeway speculates is controlled by HLF. Opp. at 1, 3. But HLF has already produced the 2025 engagement letter governing this litigation, and there is nothing "extraordinary" about it. Supp. Laroche Decl., Ex. 1. The agreement expressly caps Mr. Wilson's recovery at his per-violation statutory damages, obligates him to "represent the interests of all members of the class," and provides that any resolution "is subject to court approval and must be structured in the best interest of the class as a whole." Supp. Laroche Decl., Ex. 1 at 1–3. Mr. Heidarpour has also submitted a declaration stating that HLF has no say in whether the case is settled, which reinforces that HLF does not "control" Mr. Wilson. Heidarpour Decl. ¶ 4.

Freeway's response is to speculate that there may be other agreements and that Mr. Wilson did not review or sign this one. Opp. at 2 ("Freeway has reason to believe Wilson did not even

sign the co-counsel agreement HLF itself produced."). Freeway's accusations are baseless.[2] Mr. Heidarpour has represented under oath that this is the governing engagement letter (Heidarpour Decl. ¶ 7), and Mr. Wilson's counsel in the underlying action has said the same thing in court filings. *See Wilson v. Freeway Ins. Servs. of Am., LLC*, No. 6:25-cv-01869-MC (D. Or. 2025), Dkt. No. 26 at 2–3.[3]

The only case cited by Freeway supports HLF. Opp. at 16 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009)). In *Rodriguez*, the Ninth Circuit concluded that the named plaintiffs had agreements creating conflicting financial interests with the class. 563 F.3d at 955. Nothing in *Rodriguez* suggests that Freeway is entitled to seek discovery about 100 other cases. To HLF's knowledge, no court anywhere has authorized such a fishing expedition.

Likewise, Freeway has repeatedly told the District of Oregon that its motion to deny class certification is ready to be decided "now," "without further discovery," because "no amount of discovery" can cure the defects it asserts. Ex. D at 2, 4, 18–20. Freeway has made similar assertions in its opposition to Plaintiff's motion for voluntary dismissal, arguing it has a "more-than-sufficiently developed adequacy record." Ex. F at 10. Freeway cannot escape those concessions simply because it "announced" its intention to serve a Subpoena in its motion papers. Opp. at 12.

---

[2] Freeway's newest theory, that the 2025 engagement letter must be suspect because HLF did not produce a DocuSign audit trail, provides no basis for discovery. Freeway already has the executed agreement, and Mr. Heidarpour has attested under oath that it is authentic and governs this litigation. Heidarpour Decl. ¶ 7. Freeway's inference that the absence of a DocuSign log means HLF signed for Mr. Wilson is precisely the kind of unsubstantiated speculation that cannot justify a subpoena to a law firm.

[3] Freeway also points to Mr. Wilson's initial engagement letter with HLF. There is nothing improper about that agreement. *See infra* Part II.B.3. Regardless, it is irrelevant to the class certification issue because it does not govern the underlying action.

**2. The discovery is not relevant to Mr. Wilson's Motion for Voluntary Dismissal.** Freeway argues in one sentence that the requested discovery is relevant to the "terms of dismissal," but it cites no authority for this position. Opp. at 17. Nor could it. A Rule 45 subpoena must target information relevant to a claim or defense. Fed. R. Civ. P. 26(b)(1); *see also Hesco Bastion Ltd. v. Greenberg Traurig LLP,* No. 09-0357, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009) (declining to enforce a subpoena to a law firm where the documents sought were "not relevant to the claims or defenses").

**3. There is no sanctions proceeding.** Freeway's final argument is that discovery may support sanctions, but there is no sanctions proceeding. *See* Opp. at 17. Freeway has cited no authority supporting that it may conduct a wide-ranging fishing expedition in search of evidence that will purportedly be used to support a sanctions proceeding that does not exist. The only case Freeway cites stands for the unremarkable proposition that a court may enforce Rule 11 sanctions after a plaintiff files a notice of dismissal. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990). Numerous cases support HLF. Mot. at 25 (collecting cases).

Freeway also provides no basis to remotely suggest that sanctions would be appropriate against HLF. *First*, Freeway claims that HLF "referred" claims lacking merit that were eventually settled or dismissed. Opp. at 20; Watstein Decl. ¶ 5. A settlement supports that the case has merit, not the opposite. The fact that a case was dismissed is not evidence that it was somehow improper. *See FMC Corp. v. U.S. EPA*, 279 F.R.D. 14, 17–18 (D.D.C. 2011); *Burford v. Acct. Prac. Sales, Inc.*, 786 F.3d 582, 589 (7th Cir. 2015). Freeway offers no facts supporting something was wrong with those cases: it simply cites briefing in which it made the same unsupported accusations. Opp. at 2. Regardless, HLF does not decide whether to file or settle the cases it refers to other counsel. Heidarpour Decl. ¶ 4. Freeway ignored that point.

*Second*, Freeway devotes much of its opposition to HLF's initial engagement letter with Mr. Wilson. *See, e.g.*, Opp. at 14. It claims the letter gave the firm "advance blanket" authority to settle Mr. Wilson's claims without his authorization, but the letter does not say that. Opp. at 18. Moreover, HLF does not settle cases without client authorization, which is what concerned the court in *Slevin v. AB Hollywood, LLC*, No. 3:23-cv-01404, 2026 WL 892186, at *11 (D. Or. Mar. 31, 2026) (attorney attempted to settle a case without ever consulting their client about how it was proceeding). *See also* Heidarpour Decl. ¶ 3 ("HLF obtains appropriate client authorization before resolving those matters[.]").[4] Freeway also asserts that the engagement letter has a "severe termination" provision, but again the letter does not say that. Opp. at 11. Mr. Wilson can terminate on 30 days' notice subject to HLF completing any ongoing settlement negotiations on Mr. Wilson's behalf. Watstein Decl. Ex. 1 at 3. In any event, this engagement letter is irrelevant because it does not govern Mr. Wilson's underlying action or any of the other litigated cases involving Mr. Wilson that Freeway expresses concerns about. Heidarpour Decl. ¶ 7.

*Finally*, Freeway suggests that this discovery is relevant to its affirmative defenses, such as fraud, consent, and unclean hands, presumably on the theory that HLF somehow manufactured the underlying claim. Opp. at 16. HLF has already produced documents and submitted a declaration showing that it did not even meet Mr. Wilson until months after Freeway sent the messages forming the basis for the underlying action. *See* Heidarpour Decl. ¶ 5 ("Mr. Wilson first contacted HLF in or about October 2024 and executed an engagement letter with HLF shortly thereafter."). Mr. Wilson's declaration says the same thing. *Wilson*, No. 6:25-cv-01869-MC, Dkt.

---

[4] The 2024 engagement letter is also governed by the laws of the District of Columbia, where Mr. Heidarpour is barred. Freeway cites no authority suggesting that the engagement letter is inappropriate under the ethical rules there.

No. 29 at ¶ 16 ("I had no contact or communication of any kind with the Heidarpour Law Firm, or with anyone I understood to be associated with that firm, before October 3, 2024 . . . .").

Regardless, Freeway's position is contradicted by its argument just two paragraphs later in the Opposition. Freeway claims that it "never advanced" an argument that the underlying action was based on manufactured messages: it simply has speculative concerns that later claims were "manufactured" that it wants to test through discovery. Opp. at 19. Here, again, Freeway has no evidence that HLF "manufactured" other unidentified claims. *Id.* at 8. Freeway relies on its own attorney's declaration that does not identify any cases and makes the same broad-brush accusations of misconduct that are in Freeway's Opposition. *Id*. Likewise, Freeway asserts, relying on its own attorney's declaration, that it has "traced lead forms in HLF-referred matters to the plaintiff's own IP address and watched demand letters vanish the moment fraud was raised." *Id*. at 20. However, it points to nothing in the record or any Wilson matter to support that assertion. It offers only the conclusory say-so of its own attorney's declaration, unaccompanied by the lead forms, IP records, demand letters, or any other evidence that would substantiate the charge. *Id.* And even those accusations are not about HLF.

At bottom, Freeway cannot escape the mountain of cases holding that civil discovery is not an investigative tool to develop evidence of purported misconduct for use in other proceedings. *See Apollo Grp., Inc. v. U.S. Dep't of Educ. (In re Apollo Grp., Inc.)*, 329 F. App'x 283, 284 (D.C. Cir. 2009); *see also Jiang*, 2026 WL 962496, at *6; *Pederson v. Preston*, 250 F.R.D. 61, 65–66 (D.D.C. 2008); *Edwards v. Gordon & Co.*, 94 F.R.D. 584, 586 (D.D.C. 1982). And Freeway cannot solve that problem by making baseless accusations of fraud and misconduct.

### C. The Requests Seek Privileged Information and Are Disproportionate to the Needs of This Case

Freeway makes arguments about privilege that HLF never made. HLF never took the position, for example, that engagement letters are not privileged—it produced them.[5] Opp. at 25. Instead, HLF argued that Category 2 requests—which seek information about all individuals who performed forensic analysis of Mr. Wilson's claims and the manner in which they conducted it—implicated attorney work product. Mot. at 20. Freeway's arguments about those requests are very limited. It says it only seeks "who performed" certain work, but the requests are far broader than that. Opp. at 25.

RFP 5 seeks "the date, time, IP address, device, browser, application, user agent, geographic location, and method of access for each instance" in which anyone "monitored, reviewed, searched, downloaded, or otherwise" evaluated Mr. Wilson's phone data. Ex. A at 9. Similarly, RFP 6 seeks every "device, software, or platform" used to evaluate that data. *Id*. at 9–10. These requests seek the timing, manner, and methods by which HLF conducted its investigation, which is quintessentially attorney work product. *See, e.g.*, *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (explaining the work product privilege exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent"); *Disability Rts. Council of Greater Wash. v. Wash. Metro. Transit Auth.*, 242 F.R.D. 139, 142–44 (D.D.C. 2007) (the "process of selecting documents is

---

[5] Freeway also suggests that HLF produced engagement letters, demand letters, and settlement documentation in response to subpoenas in other actions without moving to quash. *See* Watstein Decl. ¶ 8. It is unclear which productions Freeway is referring to. Regardless, HLF has never produced information about nearly 100 cases in response to a subpoena, nor has it produced its attorney work product, which is precisely what the Subpoena demands here.

unquestionably entitled to at least the protection given fact-based or ordinary work product" as it reflects counsel's "thought processes in preparing for litigation").[6]

Freeway also misconstrues HLF's argument about overbreadth, which is limited to Category 4 requests (Nos. 10 through 12). Ex. A at 6. HLF argued that those requests are disproportionate to the needs of the case and unduly burdensome because they abandon any link to Freeway or the underlying action. Mot. at 21. Instead, they reach "any TCPA claim asserted by Wilson," "each TCPA claim, demand, lawsuit, or potential lawsuit involving Wilson," and "each letter" HLF sent on Mr. Wilson's behalf. Ex. A at 10. This is not "matter-specific" discovery, as Freeway contends. Opp. at 22. It is a broad fishing expedition into cases having nothing to do with Freeway. Mot. at 19–20 (collecting cases quashing similar requests). This overbreadth problem is not solved by limiting the requests to "documents sufficient to identify" ***every*** agreement, demand, letter, and other related documents about ***every*** TCPA matter involving Mr. Wilson. *See, e.g.*, *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 337, 341 (D.D.C. 2021) (granting motion to quash and finding that subpoena requesting documents "sufficient to identify" still constituted an undue burden); *Burlodge v. Standex Int'l Corp.*, 257 F.R.D. 12, 14, 18–19 (D.D.C. 2009) (granting motion to quash subpoena that included requests limited to "documents sufficient to show" or "establish" because it imposed an undue burden on a non-party).

Freeway's remaining arguments are without merit. It argues that it "could have asked for HLF's referral and financial arrangements in all TCPA class actions . . . , which would show their

---

6 Freeway's suggestion that HLF is a mere "lead generator" rather than a law firm is both baseless and legally irrelevant. Opp. at 4, 24. HLF is a law firm whose attorneys are members of the bar, and the forensic and claim-evaluation work reflected in the Category 2 requests is attorney work product, regardless of which firm personnel performed it.

abuse of process extends to hundreds of other [cases]." Opp. at 21–22. This accusation, made without citation to anything, is outrageous and underscores Freeway's willingness to resort to bluster instead of legal analysis. Regardless, identifying ways Freeway could have made a request broader does not transform already overbroad requests into narrow ones. Freeway also claims that the requests are not overbroad because they are necessary "to expose an abuse of the federal court system on a monumental scale." *Id.* at 23 & n.2. Freeway, again, makes this claim with no evidence. It gratuitously highlights an old and unrelated conviction of Mr. Heidarpour's family member but omits that she provides secretarial services for the firm. *Id*. Freeway otherwise repeats that some of Mr. Wilson's claims have been dismissed but again omits that HLF has nothing to do with whether Mr. Wilson's cases are filed, settled, or dismissed. *Id*. at 6; Heidarpour Decl. ¶ 4.

## III. THE DEPOSITION SHOULD BE QUASHED

Freeway's contention that it agreed to hold the deposition "entirely in abeyance" pending the motion to quash is simply incorrect. *See supra* Part I. In fact, the "entirely in abeyance" language is from an email Freeway sent after HLF filed an emergency motion. Dkt. No. 4, Ex. 1 at 3. Its new offer to delay the deposition until thirty days after document production underscores the point. Freeway could have made that offer at any point in the weeks leading up to the motion to quash. Instead, it declined to agree to a stay and took the position that it was "still entitled" to ask about all deposition topics even if the document requests resolved them. *Id*. at 6. In any event, Freeway's new position does not work because HLF is not willing to produce additional documents.

The deposition should be quashed now for all the same reasons discussed above: it seeks information that is available through Mr. Wilson—irrelevant, privileged, and overbroad. *See supra* Part II. ***Indeed, Freeway has not even deposed Mr. Wilson in the underlying case.*** *See, e.g.*, *Coleman*, 284 F.R.D. at 19 (quashing subpoena to counsel where the requesting party failed

to compel a non-attorney witness before "jumping straight" to the attorney); *United States v. All Assets Held in Acct. No. XXXXXXXX*, No. 13-1832, 2019 WL 95605, at *7 (D.D.C. Jan. 3, 2019) (same).

Freeway counters that it is not seeking privileged information at a deposition, just "concrete facts." Opp. at 27. If that were true, then document productions would suffice. Freeway's true aim is to embark on a fact-finding investigation into purported wrongdoing having nothing to do with this case. Freeway admits this—it claims it needs to know, through a deposition, "who HLF referred [Mr. Wilson's] claims to, on what terms, what demand letters HLF sent on his behalf via power of attorney, what agreements HLF signed on his behalf, or who accessed his accounts on HLF's behalf." *Id.* None of this has anything to do with the underlying action.

Freeway's approach is clearly improper under a mountain of case law subjecting attorney depositions to heightened scrutiny. *See, e.g.*, *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 379 (D.D.C. 2011) (quashing subpoena to counsel where discovery sought "may be obtained from other more appropriate sources, and any benefit from deposing the petitioner is outweighed by the burden it will impose"); *Jiang*, 2026 WL 962496, at *7–8 (quashing deposition subpoenas where petitioners showed "that the various categories of potentially non-privileged testimony that NVIDIA ostensibly seeks are either not relevant to the issues at stake in the underlying litigation or are available elsewhere"). Freeway has no contrary authority, just cases denying motions to quash non-lawyer depositions in markedly different circumstances. Opp. at 26 (citing *Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) (denying a non-party minor fact witness's motion to quash where she conceded she possessed relevant information)).

## IV. IN THE ALTERNATIVE, THE COURT SHOULD DEFER RULING UNTIL THE DISTRICT OF OREGON DECIDES THE PENDING MOTIONS

Freeway contends that deferring the motion to quash until the District of Oregon decides the pending motions has been addressed "head on" by that Court. Opp. at 7. This is incorrect. The Oregon court simply ordered the parties to fully brief the class certification motion, which it intends to decide along with the motion to dismiss. *See Wilson*, No. 6:25-cv-01869-MC, Dkt. No. 25. Nothing about that routine scheduling order suggests the Court condones the broad-ranging fishing expedition sought by Freeway here. And Freeway offers no reason why waiting for further guidance from the District of Oregon is not the prudent course.

The District of Oregon's most recent order confirms that deferral is the prudent course. On July 14, 2026, the court set oral argument for August 19, 2026 on Freeway's motion to deny class certification and Mr. Wilson's motion to voluntarily dismiss, centralized all fourteen of Mr. Wilson's TCPA cases pending in the District of Oregon before him, and set a status conference for August 18, 2026. *See* Wilson, No. 6:25-cv-01869-MC, Dkt. No. 30. The order does not address discovery. The court overseeing the underlying action has thus charted a clear path to deciding the pending motions on the merits, on a defined schedule, without any discovery in the interim. That is all the more reason for this Court to defer ruling and maintain the stay until the District of Oregon resolves those motions.

## V. HLF IS ENTITLED TO ITS COSTS AND FEES UNDER RULE 45(D)(1)

Freeway's request for fees is premised on its complaints about HLF filing a motion for an immediate stay. Opp. at 28–30. Those arguments misstate the record for all the reasons discussed above. Freeway also has no basis to argue it incurred costs because of the request for immediate relief or that it impacted counsel's trial schedule. The Court immediately granted HLF's stay request, and HLF offered (twice) to set a schedule to avoid interrupting counsel's trial schedule.

Freeway ignored those requests and does not reference them in its Opposition. Freeway's only other argument for fees is that HLF told Freeway it would seek costs in meet and confer correspondence, which HLF allegedly used as "leverage to extract concessions." Opp. at 29–30. No such exchange occurred. HLF told Freeway it would seek fees if it continued to take unreasonable litigation positions that are contrary to law. Ex. G at 14, 21. Freeway continued to do so and so HLF sought its fees.[7]

Freeway's objections to HLF's request for fees are without merit. Freeway argues that it acted reasonably during the meet and confer process because it agreed to delay the compliance deadlines by one week and "narrowed" three requests. *See* Opp. at 3. Freeway did not narrow those requests. HLF produced documents and provided information, and then Freeway agreed that they were satisfied. *See* Ex. G at 3–4. Regardless, this is not why HLF requested fees. Awarding HLF fees is appropriate because Freeway has taken hyperaggressive litigation positions that are unreasonable, waste judicial and party resources, and are contrary to law. Freeway has no response as to why it is unwilling to stay the compliance deadline until the District of Oregon provides guidance on the pending motions. Freeway has not cited a single case supporting that it is entitled to broad-ranging discovery as part of its purported investigation into HLF's conduct, but many cases hold that this type of fishing expedition is inappropriate. And Freeway has now doubled

---

[7] Freeway frames the subpoena it served in another case as "ordinary coordination of litigation," but this is not how it was presented during the meet and confer process. Opp. at 30. Freeway made clear that it wanted to pursue separate proceedings against HLF, wanted discovery for that purpose, and would obtain that information "one way or another." Ex. G at 13. There is nothing "ordinary" about this under the Federal Rules. *See Edwards v. Gordon & Co.*, 94 F.R.D. 584, 586 (D.D.C. 1982) (discovery should be "confined to developing facts underlying a plaintiff's claim or claims and not used as a 'fishing expedition' to discover what else may be amiss or to develop wholly new claims unrelated to what is averred in the complaint").

down on its baseless accusations of misconduct, which it continues to make without evidentiary support.

## CONCLUSION

For the foregoing reasons, the Court should stay the Rule 30(b)(6) deposition, quash the Subpoena, and award HLF its costs and fees.

DATED: July 15, 2026

Respectfully Submitted,

Neal Katyal (D.C. Bar No. 462071)
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

Matthew J. Laroche (*pro hac vice*)
Peter Farag (*pro hac vice*)
Isabelle Laskero (*pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

*Attorneys for Non-Party Heidarpour Law Firm, PLLC*