Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
Rebecca Rhym (*Pro Hac Vice*)
rrhym@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000

*Attorneys for Defendant Freeway Insurance Services of America, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC. | Case No. 6:26-mc-00830-MC |
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC,<br><br>Defendant. | **DECLARATION OF RYAN D. WATSTEIN IN SUPPORT OF FREEWAY'S NOTICE OF NEW EVIDENCE** |

I, Ryan D. Watstein, declare as follows:

1. I am a co-founder of Watstein Terepka LLP, an approximately 27-lawyer firm based in Atlanta, Georgia, and lead counsel for Defendant Freeway Insurance Services of America, LLC ("Freeway") in this action and in the related subpoena proceeding. I am admitted pro hac vice. I have personal knowledge of the facts in this declaration, or learned them from records produced in discovery, public court records, and work performed at my direction by attorneys and staff at my firm, which I have reviewed. If called to testify, I could and would testify competently to them.

2. I submit this declaration in support of Freeway's Notice of New Evidence. The declaration of my colleague James M. Ruley, filed with the notice, addresses correspondence and conferral he handled.

**HLF's Production**

3. At my direction, attorneys at my firm reviewed the documents Heidarpour Law Firm, PLLC ("HLF") has produced and the privilege log it has served. Based on our review of the log, [redacted] HLF has produced [redacted] sent on Wilson's behalf. Of those, [redacted] concern messages Wilson received after [redacted] including [redacted]

**Wilson's Settlements**

4. HLF has produced, under the interim protective order and designated confidential, [redacted] settlement agreements and settlement statements for Wilson's claims. At my direction, attorneys and staff at my firm tabulated, for each settlement, the total payment, the amount paid to Wilson, and the amount paid to counsel. I have reviewed that tabulation. The figures below are

aggregates and do not identify any settling defendant. Every settlement statement among those documents includes [redacted]

5. The [redacted] settlements total $6,361,300. Wilson received $232,980, or about 3.7% of the total. Counsel received $6,088,820, or about 95.7%. The balance went to co-claimants or, in one [redacted] settlement, is not allocated in the produced documents; that settlement is counted in the total, with nothing attributed to Wilson.

6. Dividing the total paid ($6,361,300) by the total Wilson received ($232,980) yields a multiple of about 27.3. That multiple assumes Wilson's share reflects trebled damages of $1,500 per violation. The TCPA provides $500 per violation and permits trebling only for willful or knowing violations. 47 U.S.C. § 227(c)(5). Wilson's own account is that someone else entered his number, Aug. 19, 2026 Hr'g Tr. 55:23–56:1, which would not support trebling. Measured against untrebled damages of one-third of Wilson's share, or $77,660, the total paid is about 81.9 times Wilson's statutory damages, and the $6,088,820 paid to counsel is about 78.4 times. In the [redacted] settlement described in paragraph 7, one-third of Wilson's [redacted] share is about [redacted] and the [redacted] paid to counsel is about [redacted] times that amount.

7. One defendant paid [redacted] to resolve Wilson's individual claim for a handful of calls. Wilson received [redacted], and the remaining [redacted] went to his counsel. Kaufman P.A. was Wilson's counsel of record in that case, which settled about [redacted] after it was filed, [redacted]

8. Three other defendants each paid more than [redacted], and we understand from counsel for the three unproduced agreements that those total [redacted] as noted below.

9. Based on our review of publicly filed dockets, 27 of Wilson's filed cases resolved before any written discovery response could have come due under Rules 26(d)(1), 33, 34, and 36.

10. Three settlement agreements, from two settling defendants, have not been produced. On September 21, 2026, after a call with me, counsel for those two defendants wrote to me that he would advise his clients not to fight production. When those agreements still had not been produced, I called him on October 27, 2026, and followed up by email on October 28, 2026. I spoke to his paralegal for around 10 minutes on October 27 and she advised she would have counsel get back to me urgently. As of the date of this declaration, I have not heard back and the three agreements have not been produced.

11. Counsel for those two defendants has told Freeway's counsel that the three settlements total more than [redacted]. He specifically said they were [redacted]

**Referral Counsel's Rates, Caseload, and Fees**

12. Avi R. Kaufman of Kaufman P.A. has represented to courts that his hourly rate is $800, and Rachel E. Kaufman that hers is $730. *See, e.g.*, Fee Order at n.6, *Stark v. Blue Cross & Blue Shield of N.C.*, No. 1:23-cv-22 (M.D.N.C.), ECF No. 80; Decl. of Avi R. Kaufman, *Marden's Ark, Inc. v. UnitedHealth Grp. Inc.*, No. 5:23-cv-708 (E.D.N.C.), ECF No. 35-1. Attached as **Exhibit A** is a table, prepared at my direction, of the rates and hours the Kaufmans have sworn to in class settlements.

13. At my direction, my firm identified, according to Law360's federal docket data, every TCPA case filed from January 1, 2024 through October 23, 2026 in which Kaufman P.A. appears as counsel for a plaintiff. That is underinclusive because, among other reasons, it only identifies the cases in which he has appeared. Still, that data shows that, [redacted], Kaufman P.A. was counsel of record in at least 251 other federal TCPA cases, 247 of them pleaded as class actions; Avi Kaufman personally appeared in 213 of

them. These counts exclude state-court cases, federal cases filed before 2024, and the various other cases that are not picked up by Law360 because of how it aggregates its data, so these counts understate the firm's caseload. Attached as **Exhibit B** is the list of those cases.

14. At my direction, attorneys and staff at my firm also reviewed the class-action settlements in which Anthony Paronich sought attorneys' fees as class counsel and in which a fee motion or fee order was filed from November 1, 2022 through the present. They searched federal dockets through DocketBird and Law360, state dockets through Trellis and Westlaw, and public settlement websites, and collected the fee motions, supporting declarations, and fee orders. They identified 23 settlements. Attached as **Exhibit C** is a true and correct copy of a chart summarizing those 23 settlements.

15. My firm located a fee ruling in 16 of the 23 settlements. In those 16 settlements, courts awarded Mr. Paronich and his co-counsel a combined $34.8 million in fees. Each award equaled between 20% and one-third of the settlement fund. In seven of those 16 settlements, the fee papers state no hours or hourly rate for Mr. Paronich or his firm, but the courts awarded a combined $8.8 million in fees.

16. Where the fee papers state hours, the time stated for Mr. Paronich personally ranges from 95 to 407 hours per case, and the time stated for Paronich Law ranges from about 278 to 1,215 hours per case. In most of those settlements, co-counsel from other firms also claimed hours of their own. The hourly rates stated for Mr. Paronich range from $550 to $1,250.

17. At my direction, attorneys and staff at my firm also identified, using Law360 and federal docket data from DocketBird, the federal TCPA cases in which Mr. Paronich personally appeared as counsel for a plaintiff, filed on or after January 1, 2019, that were pending at any time from January 1, 2024 through November 3, 2026. They identified 806 such cases. The list excludes

cases in which another Paronich Law attorney, but not Mr. Paronich, appeared. Mr. Paronich hired a second attorney sometime in 2026 and was a solo-practitioner before then. Attached as **Exhibit D** is a true and correct copy of the list.

18. Of those 806 cases, 300 were pending at some point in 2024, 523 at some point in 2025, and 407 at some point in 2026 through November 3. Mr. Paronich filed 179 of them in 2024, 369 in 2025, and 137 in 2026 through November 3. Of the 523 cases pending in 2025, 58 were brought by Wilson, leaving 465 cases for other plaintiffs. During that year, those 523 pending cases had 9,836 docket entries.

19. Wilson's engagement agreement for this matter provides that Paronich Law receives 60% of counsel's fees. Wilson ECF No. 26-1 ¶ 5. Using the settlement agreements and statements HLF produced, my firm calculated counsel's share of each Wilson settlement by subtracting Wilson's share from the total. For Wilson settlements reached in 2025 in matters in which Paronich Law was involved, counsel's share totaled [redacted]. Sixty percent of that amount, [redacted], divided by an hourly rate of $800, equals about [redacted] hours. The $800 rate is the rate claimed for Mr. Paronich in four of the class settlements described above. *See* Ex. C.

20. To compare those figures with Mr. Paronich's class-action hours, my firm spread the hours stated in each class settlement evenly across the period the case was pending, except where the fee papers include dated time entries, which it used instead. On that basis, about 723 of the class-action hours fall in 2025. Added to the [redacted] hours described above, the total for 2025 is about [redacted] hours. Because several settlements disclosed no hours, the class-action figure is a floor, with the actual number necessarily being higher. Assigning just 20 hours in 2025 to each of the 465 other pending cases described in paragraph 18 would add 9,300 hours, for a 2025 total of

about [redacted] hours. Attached as **Exhibit E** is a true and correct copy of a chart showing these figures for 2024 through 2026.

**Wilson's Retainer Agreements**

21. SignNow audit logs for Wilson's engagement agreements show that Wilson signed an HLF engagement agreement from IP address [redacted] on December 27, 2024; signed another from the same address on January 3, 2025; and signed his engagement agreement for the *MAH Group* claim from the same address on May 17, 2025.

22. At my direction, attorneys at my firm reviewed the record produced by HLF and Wilson. Based on that review, Wilson [redacted]

**Wilson's Phone Records**

23. In response to Freeway's subpoena, Verizon produced call detail records for Wilson's number, (541) 999-9999, with a certification under Federal Rule of Evidence 902(11). Attached as **Exhibit F** is a summary of the call detail records Verizon produced for (541) 999-9999 in response to Freeway's subpoenas in Verizon Case Nos. 26325515 (produced June 25, 2026) and 26510128 (produced October 15, 2026), each with a custodian's certification. Together the productions contain thousands of call records. Firm staff working under my supervision reviewed every record in both productions and counted each call between Wilson's number and Chad Barnes's number, (408) 807[redacted] as Exhibit F describes, and Exhibit F accurately reflects those records. The records show no calls between the two numbers from January 9 through January 25, 2026; two calls on January 26, 2026; 26 calls in the five weeks before Barnes filed his

declaration in *Barnes v. Jet Quick, LLC*; 47 calls between January 26 and May 4, 2026; and 68 calls between May 30 and September 9, 2026.

24. Attached as Exhibit H is a summary of the network voice and text records Verizon produced for (541) 999-9999 in the same two productions, Verizon Case Nos. 26325515 and 26510128. Those records contain more than 50,000 call and text records. (202) 234-2727 is the main number on HLF's letterhead, and (562) 500-0600 is the number of Dana J. Oliver, who signed HLF's demand letters on Wilson's behalf. Firm staff working under my supervision reviewed every record in both productions and counted each call and text between (541) 999-9999 and each of those two numbers, as Exhibit H describes, and Exhibit H accurately reflects those records. Freeway will make the records available to Plaintiff on request. The records show 498 calls and texts between Wilson's number and HLF's main number from May 18, 2025 through May 14, 2026: 418 calls, 345 of them from HLF, and 80 texts, 71 of them from HLF. The records show 70 more calls and texts with that number from May 15 through September 2, 2026. The records also show 20 calls between Wilson's number and Oliver's number from November 12, 2025 through August 14, 2026, 14 of them from Oliver.

**HLF's Positions on Discovery**

25. On November 2, 2026, Freeway's counsel conferred with HLF's counsel. HLF's counsel stated that HLF would not produce correspondence from recipients of Wilson's demand letters, including correspondence accusing Wilson or HLF of fraud. When asked what the Court had in mind when it ordered "robust discovery to determine exactly what is going on with the Heidarpour Law Firm and this litigation," HLF's counsel did not identify anything. When asked what, in HLF's view, would be discovery that would go to whether fraud occurred, HLF's counsel

did not identify anything. HLF indicated it did not want to confer about the substance of those requests at all, since, in its view, the parties were at an impasse on the scope of discovery generally.

**Filing Data**

26. HLF refers clients to other firms to file claims under the Telephone Consumer Protection Act ("TCPA"), including Paronich Law, P.C. and Kazerouni Law Group, APC. In July 2025, I raised fraud concerns with Mr. Paronich about some of the TCPA claims he was bringing for plaintiffs referred by HLF. On August 19 and 20, 2025, I raised the same concerns with Kazerouni Law Group. Those firms dismissed the cases at issue in response, as discussed in previous filings.

27. At my direction, attorneys and staff at my firm used Law360's federal docket database to identify the federal TCPA cases filed from January 1, 2024 through October 23, 2026 in which Paronich Law, Perrong Law LLC, Kaufman P.A., or Kazerouni Law Group appeared as counsel for a plaintiff. They found 1,472 cases. Of those, 502 were brought by known HLF claimants.

28. HLF's role as originating counsel does not show on the docket because HLF did not appear as counsel of record in any of those cases. To identify the HLF-claimant cases, my firm compared the plaintiffs in all 1,472 cases against a list of plaintiffs it has tied to HLF. It counted a plaintiff as a known HLF claimant when at least one of the following was true: (a) HLF or one of its attorneys, including Andrew Heidarpour or Dana Oliver, has appeared as the plaintiff's counsel of record in a TCPA case; (b) a court filing identifies HLF as the plaintiff's counsel or as an interested party; (c) HLF's own records, including fee agreements, demand letters, and settlement documents HLF produced in this proceeding or in other litigation, identify the plaintiff as an HLF client; (d) the plaintiff's litigation counsel or documents in other cases identify HLF as the originating firm; or (e) my firm's investigation otherwise identified a link between the plaintiff

and HLF, such as our clients receiving demands from HLF on behalf of a particular serial TCPA litigant.

29. Filings by known HLF claimants more than doubled from the first half of 2024 to the first half of 2025, rising from 64 cases to 147. That changed after I raised fraud concerns with Mr. Paronich in July 2025 and with Kazerouni Law Group the following month. In the six months after July 1, 2025, filings by known HLF claimants fell 33%, to 98 cases. Excluding Wilson's cases, they fell 45%. Over the same period, the same firms' filings for all other plaintiffs rose 33%.

30. Filings by known HLF claimants fell further after Freeway moved to deny class certification on May 16, 2026, and after the Court granted that motion on August 19, 2026. From July 1 through October 23, 2026, the firms filed about three cases per month for known HLF claimants and about nineteen per month for other plaintiffs. Measured from their peak in the first half of 2025, monthly filings by known HLF claimants have fallen about 87%. Attached as **Exhibit G** is a true and correct copy of a chart of the monthly filings.

31. These figures cover only federal cases and only the plaintiffs my firm could tie to HLF, so they likely understate HLF's share of these firms' filings.

**Vendor Records**

32. On November 5, 2026, Attentive, an automated marketing platform, produced records in response to one of the subpoenas described in paragraph 20 of the Ruley Declaration. Attentive is one of the many platforms that brands use to send marketing texts, so its records reflect only those submissions that ran through its system. The records list, for each phone number and each brand that uses Attentive, the date the number was opted in to receive that brand's marketing texts and any opt-out date. Attentive identified each brand only by an anonymized number. Attached as **Exhibit I** is a true and correct copy of the production.

33. The production contains 107 records, 73 for Wilson's number, (541) 999-9999; 33 for Sara Taylor's number, ending in 5873, and one for Antwane Johnson's number, ending in 2225. In every record, the first and most recent opt-in dates are the same, so attorneys and staff at my firm treated each record as a single submission to a single brand. Four of the records, two for Wilson's number and two for Taylor's, contain no opt-in date. We excluded them from our counts below.

34. Wilson's number was submitted 40 times from April 16, 2020, the earliest date in the records, through October 3, 2024, a period of about 53.6 months, or about 9 submissions per year. From October 4, 2024 through May 15, 2026, about 19.4 months, it was signed up 27 times, each to a different brand. At the earlier rate, it would only have been submitted about 14 times over that period. From May 16 through October 30, 2026, a period of about 5.5 months, the rate of submissions fell again. During that time, Wilson's number was submitted 4 times, or about 8.7 per year.

35. Taylor, another prolific TCPA litigant and client of HLF, filed 19 federal TCPA cases from November 18, 2024 through August 29, 2025. She has filed none since. Her number first appears in Attentive's records on March 8, 2024. It was submitted 6 times from March 8 through November 17, 2024 (about 8.4 months); 13 times from November 18, 2024 through August 29, 2025 (about 9.4 months); and 12 times from August 30, 2025, through October 30, 2026 (about 14 months). At her earlier rate, her number would have been submitted about 7 times during the period she was filing her TCPA class actions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 6, 2026, in Atlanta, Georgia.

*<u>/s/ Ryan D. Watstein</u>*
Ryan D. Watstein