Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
Rebecca Rhym (*Pro Hac Vice*)
rrhym@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000

*Attorneys for Defendant Freeway Insurance Services of America, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC. | Case No. 6:26-mc-00830-MC |
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC,<br><br>Defendant. | **DECLARATION OF JAMES M. RULEY IN SUPPORT OF FREEWAY'S NOTICE OF NEW EVIDENCE** |

I, James M. Ruley, declare as follows:

1. I am a senior associate at Watstein Terepka LLP and counsel for Defendant Freeway Insurance Services of America, LLC ("Freeway") in this action and in the related subpoena proceeding. I am admitted pro hac vice. I have personal knowledge of the facts in this declaration. If called to testify, I could and would testify competently to them.

2. I submit this declaration in support of Freeway's Notice of New Evidence.

**HLF's Production and Freeway's Second Subpoena**

3. On October 2, 2026, I emailed counsel for Heidarpour Law Firm, PLLC ("HLF") about deficiencies in HLF's production. Among other things, I identified three pre-suit demands HLF had sent on Wilson's behalf that we knew from our own internal records HLF had not produced, asked HLF to search again, and challenged HLF's confidentiality designations. Attached as **Exhibit A** is a true and correct copy of that email.

4. HLF responded by letter dated October 14, 2026, a true and correct copy of which is attached as **Exhibit B**. HLF stated that it had run additional searches. Ex. B at 3–4. It also stated that, [redacted] *Id.* at 11. With that letter, HLF produced 24 more demands: 21 letters and the three emails I had identified.

5. On October 16, 2026, I served Freeway's second subpoena on HLF, with compliance due November 9, 2026. A true and correct copy is attached as **Exhibit C**. Request No. 1 quotes HLF's September 23, 2026 letter describing Andrew Heidarpour as having "worked" at Richard J. Daschbach's firm.

6. Attached as **Exhibit D** is a true and correct copy of my October 16, 2026 email transmitting that subpoena to HLF's counsel, which states: "We are serving this second subpoena in part to see if we can avoid having to re-notice HLF's deposition."

7. Attached as **Exhibit E** is a true and correct copy of HLF's November 2, 2026 Responses and Objections to Freeway's second subpoena. For eighteen of the nineteen requests, HLF stated that it will not search for or produce documents beyond those it had already produced. For Request No. 5, it stated that it has no responsive documents.

8. Attached as **Exhibit F** is a true and correct copy of correspondence reflecting HLF's position that the protective order should bar use of confidential material outside this proceeding. HLF has designated nearly all of its production as confidential, including the demand letters it sent to companies.

**Wilson's Settlement Agreements**

9. After the Court ordered production of Wilson's settlement agreements, HLF did not just produce the agreements. Instead, HLF contacted each defendant and asked whether it objected to the production. HLF then told Freeway it would not produce any agreement over a defendant's objection, citing the agreements' confidentiality provisions, even though the Court had already ordered production.

10. The agreements did not require any of that. I have reviewed the settlement agreements HLF has since produced. Each permits disclosure under a court order without the other side's consent. Some require no notice at all, others require only prompt written notice, and the strictest require only notice and a chance to object in writing. For example:

a. One permits disclosure [redacted] and contains no notice requirement;

b. Another provides that, if a court [redacted] the compelled party must [redacted]"; and

c. The most demanding provides that a party served with a subpoena or court order [redacted]

Once HLF gave whatever notice an agreement required, nothing in it stood in the way of production.

11. Because HLF invited objections the agreements did not provide for, several settling defendants objected. I and my colleague Ryan Watstein contacted the settling defendants or their counsel, explained the Court's order and the interim protective order agreed to between HLF and Freeway, and asked each to withdraw any objection to production. That process took many hours over several weeks, and HLF withheld the agreements throughout. As of the date of this filing, all but two settling defendants have agreed to production, and none has opposed it. None has pressed an objection to this Court. Every hour I spent went to obtaining consent the agreements never required, for production the Court had already ordered.

12. Two settling defendants, parties to three of the agreements, have not responded with their client's position on producing the outstanding settlement agreements, though their counsel advised the settlements were [redacted] On September 22, 2026, I sent their counsel the interim protective order. I followed up on September 30 and October 2, 6, and 21, 2026. My colleague Ryan Watstein followed up several times as well, as explained in his declaration. The upshot is that it has been more than two months since the Court's order, and we still do not have some of the most basic of information it required to be produced.

**Wilson's Discovery Responses**

13. Attached as **Exhibit G** are true and correct copies of Wilson's responses to Freeway's interrogatories and requests for production, including his response to Interrogatory No.

20 [redacted] and his response to Request for Production No. 53.

14. Wilson's privilege log [redacted]

15. On October 29, 2026, I sent Wilson's counsel a letter identifying deficiencies in Wilson's responses, a true and correct copy of which is attached as **Exhibit H**. We conferred by video conference that day. I asked for a complete privilege log by November 4, 2026 and supplemental responses and documents by November 6, 2026. As of the date of this declaration, Wilson has provided neither.

**Referral Counsel Subpoenas**

16. On October 16, 2026, I issued and began serving subpoenas on Perrong Law LLC, Paronich Law, P.C., and Kaufman P.A. seeking, among other things, records of the time each firm spent on Wilson's matters. Each firm retained outside counsel.

17. On November 2, 2026, Paronich Law's counsel served the responses and objections attached as **Exhibit I**. It objected and stated that it "has not agreed to produce any documents in response to the Subpoena." *Id.* at 2.

18. On November 3, 2026, Perrong Law's counsel, Amit B. Patel of Jenner & Block LLP, sent me the letter attached as **Exhibit J**, setting out Perrong Law's objections to its subpoena. Perrong Law objected to the subpoena in its entirety and stated that it "will not produce documents in response to it at this time." Ex. J at 8.

19. Kaufman P.A. has not produced documents in response to its subpoena, nor has it agreed to do so. Attached as **Exhibit K** is a true and correct copy of an October 29, 2026 email from Kaufman P.A.'s counsel stating that Kaufman P.A. does "not agree to have any motion

concerning this subpoena heard in the District of Oregon." After it objected on technical grounds, I served an amended subpoena on Kaufman P.A. with a November 16, 2026 return date.

**Vendor Subpoenas**

20. On October 16, 2026, I served subpoenas on behalf of Freeway on eighteen lead-generation, text messaging, and automated-marketing vendors for records of (a) web-form submissions using Wilson's number and the numbers of two co-plaintiffs who sued alongside him through the same HLF counsel, Sara Taylor and Antwane Johnson; and (b) outbound texts to those plaintiffs' numbers via the third-party platforms.

21. On October 22, 2026, HLF's counsel sent Mr. Watstein and me the letter attached as **Exhibit L**. The letter asked Freeway to withdraw the vendor subpoenas and reissue them without the two co-plaintiffs' numbers, and to hold compliance in abeyance "while we work through these issues, including as necessary through Court intervention." Ex. L at 1.

22. On October 23, 2026, Mr. Watstein responded by email to HLF's counsel and me. He wrote that the two additional numbers were not an error because "[t]hey belong to two of Wilson's co-plaintiffs," and that "Freeway will not withdraw the Vendor Subpoenas, reissue them, or ask the vendors to hold compliance." He also offered "to confer on scope where a vendor identifies a burden." A true and correct copy of that email is attached as **Exhibit M**.

23. A week later, on October 30, 2026, after Freeway declined to pause compliance, HLF's counsel wrote to me that "we think we'll need to go to the Court soon." A true and correct copy of that email is attached as **Exhibit N**.

***Wilson v. MIA Aesthetics Holdings, LLC***

24. Jeffrey J. Leavitt of Vedder Price P.C. appeared as counsel for Mia Aesthetics Holdings, LLC in *Wilson v. Mia Aesthetics Holdings, LLC*, No. 1:25-cv-24103 (S.D. Fla.), ECF

No. 23. On October 9, 2026, Mr. Leavitt wrote to me that the person whose name and email address appear on the lead form listing Wilson's phone number was a woman in Oregon, that he had spoken with her, and that she "had no clue what was going on." He also told me, on our October 12, 2026 call, that she denied filling out the form.

25. Attached as **Exhibit O** is a true and correct copy of Mia's Motion to Stay Class Discovery, *MIA* ECF No. 22, with its Exhibits 1 and 2, *MIA* ECF Nos. 22-1 and 22-2.

26. Attached as **Exhibit P** is a true and correct copy of the docket in *Mia*. It reflects the court's order on Mia's motion to stay (ECF No. 30, April 7, 2026), the parties' stipulation of dismissal (ECF No. 31, April 21, 2026), and the order closing the case (ECF No. 32, April 22, 2026).

27. Attached as **Exhibit Q** is a true and correct copy of Plaintiff's First Set of Discovery to Defendant, which Wilson's counsel served on Freeway on February 21, 2026. Among other things, it requests all records of each outbound marketing call or text message sent by Freeway or its vendors (Request for Production No. 16), all evidence of written consent for those calls (No. 17), and all complaints or do-not-call requests concerning outbound calls (No. 5), for a period beginning four years before the complaint was filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 6, 2026, in Marietta, Georgia.

*/s/ James M. Ruley*
James M. Ruley