# EXHIBIT B

Milbank
MATTHEW LAROCHE
*Partner*
55 Hudson Yards | New York, NY 10001-2163
T: +1 (212) 530-5514
mlaroche@milbank.com | milbank.com

October 14, 2026

**VIA EMAIL**

Ryan D. Watstein
James Ruley
Watstein Terepka LLP
75 14th Street NE, Ste. 2600
Atlanta, Georgia 30309

Re: *In re Subpoena to Heidarpour Law Firm, PLLC*, 26-mc-830 (D. Or.).

Dear Ryan and James:

We write on behalf of non-party Heidarpour Law Firm, PLLC ("HLF") in response to your October 2, 2026, email (the "Production Email") on behalf of Freeway Insurance Services of America, LLC ("Freeway") concerning HLF's September 23 production. HLF remains deeply committed to providing reasonable discovery and addressing the accusations of criminal fraud and wrongdoing leveled against it in connection with Mr. Wilson's cases. But Freeway's Production Email and persistent accusations of wrongdoing are improper. Indeed, Freeway now demands the full contents of Mr. Wilson's iCloud collection—***by Freeway's own count,*** [redacted]—even though the relevant Subpoena request seeks only "documents sufficient to identify" who accessed his accounts, how, and when. That demand confirms the requests are becoming a fishing expedition.

As you know, HLF's production was substantial, including nearly [redacted] pages of documents, a [redacted] privilege log, a detailed letter addressing each of Freeway's accusations against HLF, and a detailed index identifying by Bates number documents responsive to each open Subpoena request. HLF's letter asked Freeway to carefully review the materials and confer with HLF before raising any further issues concerning HLF with the Court. Instead, late in the evening of Friday, October 2, Freeway sent HLF its position for the parties' joint submission to the Court on the protective order, which describes HLF's production as "incomplete," disputes that the production "exonerate[s]" HLF, and accuses HLF of running a "scheme" to harm victims. At the same time, Freeway sent the Production Email raising dozens of requests and demanding a written response within two business days and a supplemental production within one week (though Freeway later said it planned to send the email earlier in the week). Freeway also proposed telling the Court about the purported deficiencies before HLF had any opportunity to respond to them.

Freeway has taken a similar approach before. Freeway has previously demanded 24-hour turnarounds, including on one occasion imposing a Saturday deadline, while itself taking days or longer to provide its position on issues to HLF. *Compare* Sept. 25, 2026, email from Freeway (sent on a Friday, asking HLF to "send us HLF's position for that email to the Court by end of day tomorrow"), *with* Sept. 14, 2026, email from Freeway (responding to HLF's September 1 draft protective order after two follow-ups). Freeway also has repeatedly made serious and unsupported accusations against HLF in court, including in the midst of the meet and confer process before HLF filed its motion to quash. *See Wilson v. Freeway Ins. Servs. of Am., LLC*, No. 6:25-cv-01869-MC (D. Or.), Dkt. Nos. 19, 24; *see also* June 16, 2026, email from HLF.

HLF is willing to address Freeway's concerns, but that dialogue requires Freeway to engage in good faith and understand the facts before accusing HLF of fraud. Freeway's approach strongly suggests that it is uninterested in doing so. To be clear, Freeway has no basis to continue asserting that HLF was engaged in fraud, claim manufacturing, or acted as a shadow firm. Freeway also has no basis to claim, based on settlement amounts, that HLF operated a "scheme." For filed matters, HLF did not negotiate the settlements; litigation counsel did so, at times through formal mediation, and Mr. Wilson decided whether to accept each one. The counterparties were represented by counsel, including in some cases Freeway's own counsel, and each agreement disclosed how the settlement would be allocated. HLF's interest in those filed matters was a 30% share of what the attorneys received, and Freeway's 95% figure lumps together all counsel and costs. HLF has addressed these accusations, including most recently through its extensive production and cover letter that invited a dialogue on these issues, which Freeway ignored.

The Production Email underscores these points. It was sent without a careful review of HLF's production, cover letter, and accompanying index. Freeway repeatedly claims that HLF did not produce responsive documents that were produced. For example, Freeway asserts on several occasions that HLF produced an unsigned version of an agreement when, in fact, the signed version was produced, and Freeway asks for communications identifying the credentials provided to CFR for Mr. Wilson's iCloud login, which were also produced and addressed in HLF's cover letter. Freeway also claims that HLF's production was deficient because it did not produce all versions of a particular document or all documents on a particular subject. But Freeway's requests call for "[d]ocuments sufficient to identify," which is satisfied by documents that establish the relevant fact; it does not entitle Freeway to every native file, record, report, or underlying communication that touches the subject. Freeway also labels as "deficiencies" HLF's failure to produce documents that have never been requested and that go well beyond what was sought in the Subpoena. This includes, for example, the full contents of Mr. Wilson's iCloud data, native platform records for every e-signature document, communications with a consultant retained by HLF's counsel, and tax records for an HLF employee.

Freeway's approach is to throw every potential issue at the wall to see what sticks. Freeway raises problems with everything from production format to hash values. For example, Freeway calls the production "deficient" for failing to produce consultant invoices—documents that were never requested and have no apparent relevance to this case. Freeway also repeatedly asks

questions—in a section titled "Production Deficiencies"—for which it already has the answers: (i) Freeway demands documentation of Farideh Heidarpour's role at HLF, even though HLF explained her role during the parties' June 23 conference and Freeway confirmed its understanding in writing the next day; (ii) Freeway demands pre-suit notification letters for [redacted] even though those notifications were sent via email, which Freeway's counsel knows because it represented the underlying entities and personally received those emails; (iii) Freeway questions who uses the [redacted] account even though HLF's production makes plain that it is Mr. Wilson's iCloud account; (iv) Freeway demands the keyword list HLF provided to CFR, even though the produced correspondence shows [redacted] and (v) Freeway demands records of any access to Mr. Wilson's account after November 18, 2024, even though HLF confirmed in writing on September 9 and in its production letter that the November 18 collection was a single, point-in-time backup and that other than CFR's collection, no one at HLF or acting on its behalf accessed Mr. Wilson's iCloud account. Freeway either did not review the Production Email before sending it (which is supported by the unfilled citation placeholder, "[cite]") or decided to raise as many issues as possible to unfairly burden HLF. Both are inappropriate. *See* Fed. R. Civ. P. 45(d)(1).

HLF has spent substantial time and expense working through these demands, as the length of this letter reflects, and it responds to each below. HLF is also producing a small number of additional responsive documents identified through a subsequent review, along with documents beyond the scope of the Subpoena to narrow the areas of dispute. Producing those documents does not concede they are responsive or waive any objections. HLF again requests that Freeway carefully review the production and correspondence before raising similar issues with HLF or the Court. If Freeway raises these issues with the Court without appropriate diligence and without conferring in good faith, HLF will bring this history to the Court's attention and reserves its right to seek appropriate relief.

## I. FREEWAY'S CONCERNS ABOUT HLF'S PRODUCTION ARE MISPLACED

### A. HLF is Not Producing an Unexecuted Settlement Agreement Identified in the [redacted]

Freeway states that [redacted] reflects an [redacted], and that HLF produced [redacted]. The remaining pages are [redacted], which is not responsive to the Subpoena.

### B. HLF Produced Cease-and-Desist Letters, But Did Not Search for Emails, Texts, or Related Correspondence Beyond the Scope of the Subpoena (Requests 11 and 12)

Freeway contends that HLF's production in response to Requests 11 and 12 "was plainly incomplete" because HLF did not produce "pre-suit notification[s]" for [redacted] (the "Pre-Suit Notifications"). This is incorrect.

The Pre-Suit Notifications are not responsive to Request 11 because that request seeks claims or potential claims that HLF referred or transmitted "to any attorney or law firm." The Pre-Suit Notifications were sent to third parties who communicated with Mr. Wilson, not an attorney or law firm to which HLF referred potential claims. Regardless, the matters underlying the Pre-Suit Notifications were handled by HLF, not another law firm. The Pre-Suit Notifications also are not responsive to Request 12 because that request seeks "[d]ocuments sufficient to identify each letter" HLF sent on Mr. Wilson's behalf regarding a potential TCPA claim, but the Pre-Suit Notifications were not sent as letters, they were sent as emails. Freeway's counsel is aware of this as to [redacted] because counsel also represented those entities. Freeway now demands that HLF search for and produce not only letters, but also any demands "sent by . . . email, or text, along with related correspondence." While that is beyond the scope of the Subpoena, as a courtesy, HLF is willing to produce the three emails referenced for [redacted].

Finally, as to process, HLF conducted an extensive search for letters, including by conducting targeted searches for common language in the letters [redacted] This search led to [redacted] Based on Freeway's email, HLF conducted an additional review using different keyword searches [redacted] and identified additional letters responsive to Request 12, which it is producing contemporaneously with this letter.

### C. HLF Produced Documents Sufficient to Identify Engagement and Settlement Agreements (Requests 9 and 10)

Freeway raises several concerns with HLF's production in response to Requests 9 and 10, which seek "[d]ocuments sufficient to identify" any agreement, referral, fee-sharing, co-counsel, or other financial interest HLF has in Mr. Wilson's claim against Freeway (Request 9) and in any TCPA claim asserted by Mr. Wilson (Request 10). As outlined below, Freeway overlooks what is in the production or requests documents and information beyond the scope of the Subpoena.

*First*, Freeway identifies two filed matters for which it says "no contingent fee agreement or class action authorization" was produced: [redacted] As [redacted].

*Second*, Freeway contends that for three matters [redacted] HLF produced [redacted]

[redacted] The production includes versions of the [redacted]. The [redacted] is unrelated to Mr. Wilson and was captured only because it was sent to Mr. Wilson's email in error.

*Third*, Freeway demands that HLF produce a DocuSign certificate of completion for Mr. Wilson's contingent fee agreement for the Freeway action and explain why that agreement was executed using DocuSign and SignNow. HLF produced the agreement itself, which satisfies the Subpoena's demand for "[d]ocuments sufficient to identify" in response to Request 9. The agreement was executed by [redacted]. HLF does not believe it is in possession of the DocuSign certificate of completion, and HLF also understands that Freeway has separately subpoenaed DocuSign for this information.

*Finally*, Freeway demands that HLF produce every settlement statement for any settled claim. But Request 10 seeks documents sufficient to identify HLF's financial interest in Mr. Wilson's claims, which HLF satisfied by producing (i) settlement agreements showing the amount apportioned to Mr. Wilson and to his counsel, and (ii) contingent fee agreements showing the percentage of settlements apportioned among counsel. The settlement statements, which show how much of the settlement was apportioned between Mr. Wilson and his counsel, are duplicative of what was already produced. Nevertheless, in the interest of limiting disagreements among the parties and as a courtesy, HLF is producing [redacted]. Even so, the settlement agreement for all but one of those matters discloses the fee breakdown on its face and, read together with the applicable engagement agreement, identify HLF's financial interest in the claim, which is all that Request 10 requires.[1] Mr. Wilson also was fully informed of the settlement splits for all the reasons discussed in HLF's production letter, including because Mr. Wilson signed the settlement agreements and the engagement agreements.

### D. HLF's Production Format Complies with the Federal Rules and Freeway Seeks an Immense Amount of Information Not Called for by the Subpoena

Freeway contends that HLF's production of engagement and settlement agreements conflicts with Federal Rule of Civil Procedure 45(e)(1)(B) because HLF produced flattened page images and one-page printouts of SignNow audit logs. Specifically, Freeway contends that this format "is not reasonably usable," "strips out" information, and otherwise reflects the production of a party-prepared summary. As a preliminary matter, the Subpoena specified no form of production, and there is no protocol to produce electronically stored information ("ESI") in this

---

[1] For one of those matters, [redacted] which was unfiled, counsel for the settling party requested that the settlement language be changed to state that all the funds would be paid directly to HLF. The parties' correspondence confirms they understood the recovery would be apportioned 60% to Mr. Wilson and 40% to HLF, which is consistent with HLF's engagement agreement with Mr. Wilson.

case. Under Rule 45(e)(1)(B), "[i]f a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."

That is exactly what HLF did here. HLF downloaded the agreements from SignNow and produced them in their native form as it obtained them. The SignNow audit logs also contain information relevant to authenticity (who acted, when, and from what account and IP address), and those logs are the platform's own records, not a party summary. [redacted] Freeway never explains how this production is "not reasonably usable" or what information was allegedly stripped out. It is also unclear what Freeway means by "flattened" documents. To the extent HLF collected documents as PDFs, it produced them in their native form and did not alter them. A subpoenaed party is not required to produce ESI "in more than one form." Fed. R. Civ. P. 45(e)(1)(C).

Freeway also contends that the SignNow audit logs for several envelopes reflect only a "pending" status, with no record that Mr. Wilson ever viewed or signed the documents. That assertion overlooks the signed versions already in the production. For each matter Freeway flags, HLF produced an executed agreement: [redacted]

Freeway also argues that the SignNow logs are responsive to Requests 4 through 6 because Mr. Wilson's signatures were completed through his email account. A SignNow signing session reflects activity on the SignNow platform, not access to Mr. Wilson's email account. In any event, to the extent the signing records bear on Request 4, which seeks documents sufficient to identify each person who accessed an account associated with Mr. Wilson, HLF produced [redacted] Requests 5 and 6 seek documents sufficient to identify when and how HLF, or anyone acting on

---

[2] The one exception is the [redacted] matter, which as noted above is unrelated to Mr. Wilson. Freeway also identified [redacted], but that matter was never filed. Nevertheless, HLF identified an executed version of that agreement and is producing it.

its behalf, accessed Mr. Wilson's accounts. Neither HLF nor anyone acting on its behalf accessed Mr. Wilson's email account to sign documents or for any other purpose.

Freeway next makes five demands that go far beyond what was sought in the Subpoena:

> ***1.*** ***"SignNow platform records for each SignNow document in the production, in native electronic form. This includes: the file as originally uploaded; every version or revision; all field and role metadata, including whether each signature field was assigned to a recipient or completed by the sender through a 'Fill Out Now' field; the complete document history as maintained by SignNow, including field creation, link-click, authentication, viewing, signing, and completion events with actor, email, IP, and device information; all invitation and signing-session records for*** [redacted] ***and the account setting governing the e-signature ID stamp. . . ."***

These requests do not seek documents responsive to the Subpoena, which sought documents sufficient to identify engagement and settlement agreements involving HLF for Mr. Wilson's cases. HLF also produced the available SignNow audit logs, which capture much of this information.

> ***2.*** ***"The SignNow files HLF already downloaded. The audit logs show that*** [redacted] ***Please produce those files as downloaded."***

As noted above, HLF produced these materials.

> ***3.*** ***"The DocuSign record for envelope*** [redacted] ***the certificate of completion and the full envelope history, including who created the envelope, when it was created, and each signer's email, IP address, and timestamp."***

As noted above, HLF is not in possession of this document, which is, in any event, beyond the scope of the Subpoena. HLF also already produced SignNow audit logs reflecting that Mr. Wilson executed this engagement letter.[3]

> ***4.*** ***"Native demand letters and transmittals. The demand letters were produced as images of word-processing documents. Please produce the native .docx files with metadata intact, including author, last-modified-by, and creation and modification dates. Please produce the transmittal emails as native .eml or .msg files with full headers."***

---

[3] HLF confirms that it has taken appropriate steps to preserve and not delete documents in response to the Subpoena and the Court's order. HLF does not control SignNow, but HLF has downloaded and preserved all documents relating to Mr. Wilson that HLF has access to through SignNow.

HLF produced cease-and-desist letters sent on Mr. Wilson's behalf by HLF in the form in which they were transmitted with corresponding metadata. Native word-processing files or transmittal emails were not sought in the Subpoena and have no apparent relevance to this action.

> *5.* ***"Native spreadsheets and forensic data:*** [redacted]

For the reasons below, these requests do not seek documents responsive to the Subpoena.

**E. HLF Provided a Complete Production Concerning the iCloud Collection and Claim Identification (Requests 4–7)**

Requests 4 through 7 seek "[d]ocuments sufficient to identify" the persons who accessed Mr. Wilson's accounts, the date, time, and method of access, the credentials and platforms used, and the persons who performed technical, forensic, data-mining, claim-identification, intake, or lead-review work. HLF produced documents responsive to each request and identified the responsive Bates ranges in Appendix A. Freeway contends that this production was deficient, but its ten demands underscore that Freeway is seeking documents or information that were already produced or is outside the scope of the Subpoena.

> *1.* ***"The keyword list, phone numbers, and date range HLF provided to CFR under the engagement's scope of work, and any communication in which HLF changed the scope from a device image to a cloud acquisition of the full account."***

These requests do not seek documents responsive to the Subpoena. Regardless, as HLF has explained in prior correspondence, [redacted] collected text messages and voicemails from Mr. Wilson's iCloud account. While [redacted] agreement references keyword information, the subsequent correspondence with [redacted], which HLF produced, makes clear that [redacted] simply [redacted]. In other words, [redacted].

> *2.* ***"The attachments to HLF's October 12 and October 15, 2024 emails to*** [redacted]***, which HLF described as samples of the voicemails and texts at issue*** [redacted] ***Those samples show*** [redacted] ***They therefore identify*** [redacted] ***under Request 7."***

HLF provided [redacted] These documents are not responsive to the Subpoena, and HLF will not produce them.

3. ***"Communications with [redacted] after October 24, 2024 that identify the credentials transmitted; the authentication method used, including [redacted] Requests 5 and 6 call for these documents. HLF produced the full chain through October 24 without objection. It cannot draw the line at the date the collection began."***

Request 5 calls for documents sufficient to identify each instance when HLF or anyone acting on its behalf accessed Mr. Wilson's iCloud account. That is what HLF produced through [redacted] work with Mr. Wilson's iCloud account. [redacted] [redacted] Request 6 seeks documents sufficient to identify each credential used to access Mr. Wilson's account, which HLF also produced. [redacted]. As HLF noted in its cover letter, HLF redacted Mr. Wilson's iCloud password in the communications reflecting that he sent his credentials. If Freeway believes it is entitled to Mr. Wilson's actual password, HLF proposes that the parties confer about that. The remaining categories—delivery logistics, CFR's invoice, and the engagement's destruction-of-copies obligation—are beyond the scope of the Subpoena.

4. [redacted] ***complete report, not just*** [redacted] ***These identify each access instance and its method under Request 5."***

HLF produced the pages of the report sufficient to identify the date and method of access—the case and report dates, the examiner, and the total items collected—which is all that Request 5 requires. [redacted] The complete report and the native portable case go well beyond what is called for by any Subpoena request.

5. ***"The native 'Messages and Voicemails obtained from*** [redacted] ***The file produced at*** [redacted]

HLF will not produce this, which amounts to [redacted] Nothing in Requests 4 through 7—each limited to documents "sufficient to identify" access and the persons involved—calls for wholesale production of the collected communications. Freeway's demand seeks the underlying content, which no open request calls for.

***6. "Hash values and chain-of-custody documentation for the acquisition and for every copy made from it."***

This is not responsive to the Subpoena. Freeway also has no basis to question the integrity of the collected data: [redacted]

***7. "The Ankura engagement referenced at [cite], and all communications with Ankura."***

Again, this is not responsive to the Subpoena and has no apparent relevance to this action. Ankura also was engaged by Milbank such that HLF's and Milbank's communications with Ankura are privileged and attorney work product.

***8. "The identity of the account holder for [redacted], and the basis for HLF's warranty to [redacted] that it had 'lawful possession' of and 'authority' over that data [redacted] [redacted] Mr. Wilson's communications with HLF use a different address."***

HLF confirms (again) that [redacted] Mr. Wilson is HLF's client, and Mr. Wilson [redacted], which again is confirmed by the production. Thus, it is unclear what Freeway means when it seeks the basis for the authority to collect that data, which, in any event, is beyond the scope of the Subpoena.

***9. "The name and role of each person who reviewed the collected data or identified claims from it, and whether any of those persons is a lawyer. This includes the individual identified as 'Farideh,' [redacted] HLF's September 23 letter describes Farideh Heidarpour as a firm employee but provides no documentation. Under Request 7, please produce documents sufficient to show her employment or engagement with HLF during the relevant period, such as an employment agreement or tax records."***

Freeway knows that Ms. Heidarpour is not a lawyer and works for HLF at the direction and under the supervision of Mr. Heidarpour, including by providing secretarial services and assisting with client intake. HLF told Freeway this during a meet and confer call on June 23, and Freeway confirmed its understanding of her role in writing on June 24. HLF's production also includes documents sufficient to identify individuals who performed forensic review or lead-review work, which is what Request 7 seeks. Request 7 does not, however, require HLF to produce

employment agreements and tax records for each of those individuals. If Freeway has reasonable additional questions about individuals identified in the production, HLF is willing to address them.

> ***10. "Records of any collection, export, or access to Mr. Wilson's account after November 18, 2024.*** [redacted] ***Please identify their source and produce the records of it."***

As HLF explained in correspondence and its production cover letter, HLF did not have real-time access to Mr. Wilson's iCloud account, monitor his messages, or ever sign in to his iCloud account. [redacted] used Mr. Wilson's credentials to collect text messages and voicemails from Mr. Wilson's iCloud account on November 18, 2024, and not before or after that. Freeway points out that HLF sent demand letters based on messages sent to Mr. Wilson after [redacted]s data collection, but HLF did not obtain those messages by accessing Mr. Wilson's account. Rather, Mr. Wilson [redacted]

## II. HLF'S PRIVILEGE LOG IS APPROPRIATE

Freeway's two "initial concerns" with the privilege log are without merit.

*First*, HLF's descriptions are appropriate and satisfy Rule 45(e)(2)(A)(ii). Each of the log's [redacted] entries describes the date of the communication, the sender, each recipient (including every cc and bcc), the subject line, the specific privilege asserted, and a description of the basis for withholding. This provides Freeway with sufficient information to assess each entry, which is all the rules require. Courts have upheld privilege logs supplying exactly this information. *See Cahill v. Nike, Inc.*, 2020 WL 5989202, at *3 (D. Or. Oct. 9, 2020) (log sufficient where it identified "the document, the author and recipient, the description of the redaction, the privilege asserted, and the date"); *J.M. v. Major*, 2022 WL 20101746, at *2 (D. Or. Dec. 14, 2022) (log sufficient where it stated each document's author, recipients, date, and subject, the claimed privilege, and a short description of the document). [redacted]

*Second*, HLF's log is not "incomplete." As an initial matter, HLF provided a detailed description of how it constructed the log in its production letter. HLF explained that it was not undertaking to log every privileged communication involving Mr. Wilson or co-counsel. As to [redacted]Because HLF did not log beyond that date, HLF did not capture

communications involving Milbank or Ankura. If Freeway has concerns about what HLF did or did not log, HLF proposes that the parties meet and confer about the log.

## III. HLF IS PREPARED TO WORK WITH FREEWAY ON CONFIDENTIALITY DESIGNATIONS

HLF had a good-faith basis to designate materials as confidential under the interim protective order. Freeway does not challenge the designation of settlement agreements and the CFR file listings. Freeway also acknowledges that other of its concerns can be addressed through targeted redactions of personal identifiers, such as phone numbers, email addresses, and account credentials.[4] HLF proposes the following:

- *Settlement Statements*. Given the various interested parties, including settling counterparties, Mr. Wilson, and other counsel, HLF is willing to meet and confer regarding these designations.

- [redacted] *Emails*. HLF agrees to produce a version of the [redacted] emails in a non-confidential redacted form, with only price, payment details, and the scope of the vendor engagement redacted (and remaining confidential). *See* [redacted]

- *Cease-and-Desist Letters and Engagement Agreements*. HLF is willing to meet and confer regarding these designations.

* * *

HLF believes that these responses address all of Freeway's requests. HLF remains willing to confer on any open issues.

Sincerely,

Matthew Laroche

cc: Neal Katyal
Peter Farag
Isabelle Laskero

[4] Freeway's reliance on HLF's production in *Robertson v. Plain-English Media* is misplaced. *Robertson* is a different case involving different facts and settling parties.