# EXHIBIT M

## Ryan Watstein

**From:** Ryan Watstein <Ryan@wtlaw.com>
**Sent:** Friday, October 23, 2026 6:01 PM
**To:** Farag, Peter <pfarag@milbank.com>; James Ruley <jruley@wtlaw.com>
**Cc:** Laroche, Matthew <MLaroche@milbank.com>; Katyal, Neal <nkatyal@milbank.com>; Andrew Perrong <a@perronglaw.com>; Rebecca Rhym <rrhym@wtlaw.com>
**Subject:** Re: Wilson v. Freeway Ins. Servs. of Am., LLC, No. 6:25-cv-01869-MC (D. Or.)

---

Peter and team,

The Additional Numbers were not an error. They belong to two of Wilson's co-plaintiffs. Freeway will not withdraw the Vendor Subpoenas, reissue them, or ask the vendors to hold compliance. But we are happy to discuss after you review the points below.

Before getting into those points, however, I want to say this: We urge you to have a serious conversation with your clients about whether they are being forthcoming with you. As you may not yet be aware, earlier this week Judge Kathleen Williams entered default against two longtime HLF clients on the defendant's fraud counterclaims in *Rashley v. Boost Health Insurance Agency, LLC*, No. 1:25-cv-21690-KMW (S.D. Fla.). We understand she also indicated she would refer the lawyers involved to the Florida Bar's Peer Review process, including Andrew Heidarpour and his colleague Dana Oliver.

That case started the way most HLF cases do. Dana Oliver emailed the defendant from his HLF address, reporting two clients contacted without consent, and Avi Kaufman (one of the referral counsel in the Wilson cases) filed a putative class action on April 12. The defendant owned the website the leads came from, so it had detailed data. It shows someone submitting two HLF client phone numbers under aliases, with fake email addresses, and then trying again with *different* information when their initial attempt was stymied by the website.

Both plaintiffs then filed sworn declarations, prepared by counsel, stating that they had never submitted false information and that "I do not know my co-plaintiff, and I have not met or communicated with him." Certified carrier records produced later showed **dozens of calls** between the two of them and **dozens of calls with HLF**, including during the period of potential fraud. Counsel had these phone records in their possession at the time they submitted the declarations attesting that the two HLF plaintiffs "do not know" each other and "have not … communicated" with each other. Someone also apparently wiped the plaintiffs' devices right before a device inspection.

When this came out, the plaintiffs ghosted and counsel withdrew. This is the same pattern we described in our papers in the Wilson case, and we have since uncovered yet more examples of this across HLF's portfolio—in addition to the examples we have experienced ourselves.

As such, before you send any more letters to us or the court professing HLF's good faith and upstanding conduct, please make sure you have a serious conversation with HLF about what is really going on in their litigation portfolio.

With that all said, I'll turn to your letter.

### Standing.

A non-party lacks standing to challenge a subpoena served on someone else unless it claims a personal right or privilege in the material sought. *See In re Grand Jury Subpoenas Dated Dec.*

*10, 1987*, 926 F.2d 847, 852 (9th Cir. 1991). Your letter does not assert either and, as far as we know, none exists. Vendor records of web form submissions are not HLF's privileged material. And even if any privileged material was implicated, that could be logged. As Judge McShane noted in August, privilege concerns are "best handled not by a blunt hammer to all of the requests, but rather with the production of a privilege log." *In re Subpoena to Heidarpour Law Firm, PLLC*, No. 6:26-mc-00830-MC (D. Or.), ECF 28 at 5 (the "August 24 Order").

**Burden.**

Along the same lines, the subpoenas are to vendors, not HLF. They impose no burden on HLF, and HLF hasn't pointed to any. And no vendor has served any objections or moved to quash.

The Court has already held that discovery into HLF's other clients is relevant here. The August 24 Order approved requests covering "not only Plaintiff, but similar plaintiffs HLF represented in similar TCPA claims." *Id*. It rejected HLF's relevance objection as one that "relies on viewing this case in a vacuum, ignoring the dozens of other substantially similar proposed class actions brought by Plaintiff." *Id*. at 6. It said the materials sought were "relevant not only to Freeway's affirmative defenses, but also to any future motion for sanctions against HLF, should the discovery confirm Freeway's suspicions." *Id*. The Court's preservation order also covers HLF's communications and devices regarding "all TCPA actions." *Wilson v. Freeway Ins. Servs. of Am., LLC,* No. 6:25-cv-01869-MC (D. Or.), ECF 47. Notwithstanding this, to keep costs down, we are right now seeking information about only two other plaintiffs—though we will soon also be serving additional subpoenas regarding Rashley and her co-plaintiff. We explain why below.

**The relevance of information about these two numbers.**

As your letter acknowledges, the numbers at issue belong to HLF clients. But more specifically, they belong to people who served as co-named plaintiffs with Mr. Wilson, represented by the same counsel who appear here. *See, e.g., Taylor v. Savvy Ins. Solutions, LLC*, No. 1:25-cv-12393 (D. Mass.), ECF 1; *Wilson v. LeafFilter N., LLC*, No. 2:25-cv-39 (S.D. Ohio), ECF 1; *Johnson v. Am. Home Shield of Va., Inc.*, No. 1:24-cv-02339 (E.D. Va.), ECF 20 (complaint amended on March 24, 2025 to add Wilson), transferred sub nom. *Johnson v. Am. Home Shield Corp*., No. 2:25-cv-02347 (W.D. Tenn.). The account told by HLF and other counsel in those cases is some variation of "unrelated strangers mistyped these numbers into web forms or bots generated them." That's the same account as in the *Rashley* case too, as explained above.

As to Sara Taylor, we presented evidence to her counsel that someone with a financial interest, such as HLF, may have instead been responsible for many of those submissions. In response, counsel didn't defend the cases or explain why we must be wrong. They instead dismissed them and permanently stopped filing further Sara Taylor cases, despite filing a bevy of them in rapid succession right before we disclosed our suspicions.

Our subpoenas are to third parties who would have received webform submissions from these numbers. They test, among other things, whether submissions tied to the three numbers share characteristics, whether those submissions stopped or slowed after we told counsel we believed the plaintiff's claims may be manufactured, whether they increased after retaining HLF, and so on.

HLF has told the Court it will produce "forensic data reinforcing that it did not manufacture claims." *In re Subpoena to Heidarpour Law Firm*, ECF 33 at 4. Freeway is entitled to test that against records HLF does not control. The Court made clear what it expects of this process: "I

do think there needs to be some robust discovery to determine exactly what is going on with the Heidarpour Law Firm and this litigation." Hr'g Tr. 78:22–24. It's hard to imagine how discovery can be "robust" if it doesn't involve at least some minimal testing of HLF's representations.

And to that end, we have started very narrow. Though we could have sought this data—and a vast amount of additional data—for many plaintiffs, we are for now only seeking it for other plaintiffs who participated in Wilson's cases. We will likely seek it for Rashley and her co-plaintiff next week.

For these reasons, we will not hold the subpoenas in abeyance. But we are happy to confer on scope where a vendor identifies a burden. We are also happy to discuss any of this with you at your convenience. Just let us know.

We also reiterate our hope that, in light of HLF's professed innocence, it will swiftly and without a fight produce the remainder of the information we are seeking.

Thanks,
-Ryan

**Ryan D. Watstein (bio)**
WATSTEIN TEREPKA LLP
P: 404-782-0695
ryan@wtlaw.com
www.wtlaw.com

---

**From:** Farag, Peter <pfarag@milbank.com>
**Date:** Thursday, October 22, 2026 at 3:46 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>; James Ruley <jruley@wtlaw.com>
**Cc:** Laroche, Matthew <MLaroche@milbank.com>; Katyal, Neal <nkatyal@milbank.com>; Andrew Perrong <a@perronglaw.com>; Rebecca Rhym <rrhym@wtlaw.com>
**Subject:** Wilson v. Freeway Ins. Servs. of Am., LLC, No. 6:25-cv-01869-MC (D. Or.)

[Warning – external]

James & Ryan,

Please see the attached correspondence.

Best,
Peter

Peter Farag | Milbank | Associate
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5830
pfarag@milbank.com | milbank.com

======================================= IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of

that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ======================================== This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.