Neal Katyal
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

Matthew J. Laroche (*pro hac vice*)
Peter Farag (*pro hac vice*)
Isabelle Laskero (*pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

*Attorneys for Heidarpour Law Firm, PLLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC.<br>________________________________<br>CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC,<br><br>Defendant. | Case No.: 6:26-mc-00830-MC<br><br>Underlying action:<br><br>United States District Court for the District of Oregon Eugene Division<br><br>Case No. 6:25-cv-01869-MC |

**NON-PARTY HEIDARPOUR LAW FIRM, PLLC'S RESPONSE TO DEFENDANT'S NOTICE (ECF NO. 34) AND REQUEST FOR RELIEF**

Non-party Heidarpour Law Firm, PLLC ("HLF") submits this response to Freeway Insurance Services of America, LLC's ("Freeway") Notice of New Evidence. ECF No. 34 ("Notice"). Since the August 19 hearing, at which Freeway made serious and unsupported accusations against HLF, HLF has worked to address the Court's concerns through the procedures the Court set. Freeway has done the opposite. The Notice is not a notice, but an unauthorized brief filed less than an hour after Freeway sent HLF its position for a joint submission to the Court on the same discovery disputes. It is improper for two reasons.

*First*, it disregards the Court's procedures for discovery disputes, which directs the parties to jointly present their respective positions to the Court followed by a teleconference to address them. HLF was following that procedure. On November 3, HLF sent Freeway a draft joint email to the Courtroom Deputy setting out HLF's position and asked Freeway to add its own. Declaration of Matthew Laroche ("Laroche Decl."), ¶ 7. Freeway assured HLF that its position was forthcoming, sent that position at 6:14 p.m. on Friday, November 6, and less than an hour later, without telling HLF, filed a 20-plus-page brief, with two declarations and dozens of exhibits, that purportedly "seeks no relief" but argues Freeway's side of the very disputes the joint email was meant to present. This is pure gamesmanship.

*Second*, the Notice's transparent purpose is to predispose the Court—and the public, as Freeway's allegations have attracted media attention—to believe that HLF has done something wrong before HLF can be heard. Freeway's filing asks for nothing and serves no function except to put Freeway's accusations before the Court and in the public record first and unanswered. Those accusations are riddled with misrepresentations and mischaracterizations of HLF's conduct, its positions in discovery, and the record, which HLF will address fully if given the opportunity. For example, discovery has not shown evidence of lead generation fraud, Freeway's "new evidence"

of increased opt ins is highly misleading, and Freeway omits that it agreed to the process for the production of settlement agreements that it now faults HLF for following. This is not the first time Freeway has done this—it made hyperbolic allegations about HLF at the August 19 hearing that HLF has shown to be false.

HLF reiterates that it is prepared to address any concerns the Court may have about its conduct, and it takes exceptionally seriously the Court's statements during the August conference. The Court's concerns should be resolved in an orderly way, on a complete record, and through the procedures the Court has set. That is what HLF was doing. Freeway instead chose to present its accusations through a series of unilateral, one-sided filings that leave HLF to respond piecemeal and give the Court only Freeway's side of a record that HLF has not yet had the chance to address.

For these reasons, and those below, HLF respectfully asks the Court to (i) permit HLF to respond to the Notice by November 16; (ii) hold a status conference after that response to resolve the parties' discovery disputes on a full record; (iii) hold compliance with Freeway's vendor subpoenas in abeyance as to the two telephone numbers belonging to HLF clients other than Mr. Wilson; and (iv) decline to make any findings concerning HLF's conduct until HLF has responded.

## I. HLF HAS DILIGENTLY RESPONDED TO THE COURT'S AUGUST 24 ORDER

Because the Notice presents a distorted account of discovery since the August 19 hearing, HLF briefly summarizes what has actually occurred. HLF complied with the Court's August 24 Order and sought to resolve the parties' disagreements through the Court's procedures, while Freeway has expanded its demands to seek every document in HLF's files about Mr. Wilson.

At the August 19 hearing, Freeway told the Court that the discovery it needed was "very limited" and "targeted," and that "60 days is all we asked for." Aug. 19 Hr'g Tr. at 13:8-10, 14:23-24, 41:13-14, *Wilson v. Freeway Ins. Servs. of Am., LLC*, No. 25 Civ. 1869 (MC) (D. Or. Aug. 19,

2026) ("Aug. 19 Hr'g Tr."). The Court called for "relatively robust" discovery, directed the parties to confer about "what discovery you're agreeing on and not agreeing on," and asked the parties to bring any disagreement over "how far" that discovery should go to the Court by status report and telephone conference, not by briefing. *Id.* at 78:11, 80:9-81:2. On August 24, the Court denied HLF's motion to quash Freeway's first subpoena, which contained requests limited to Mr. Wilson, the number at issue, or Freeway, and sought only documents "sufficient to identify" discrete facts. The Court also encouraged the parties to "narrow or refine" the requests. *Id.*

HLF complied. On September 23, it produced nearly 2,000 pages of documents, a 7,152-entry privilege log, an index tying documents to each request, and a letter addressing each of Freeway's accusations, including information and materials beyond what the subpoena required. Laroche Decl. ¶ 2. Notably, the letter asked Freeway to review the production and confer before raising further issues with the Court. *Id.* Freeway did not do that.

Instead, on October 2, Freeway sent an email asserting dozens of purported "deficiencies" and demanding a written response within two business days and a supplemental production within a week. Declaration of James M. Ruley ("Ruley Decl."), Ex. A; *see also* Ex. B at 1. Freeway called HLF's production deficient because it did not include the full contents of Mr. Wilson's iCloud collection, which by Freeway's own count comprises more than 880,000 text messages and voicemails spanning several years, even though the relevant request sought only documents "sufficient to identify" who accessed his accounts, how, and when. Ex. B. at 1, 9. Freeway's also demanded native files and full platform histories for every e-signature, hash values and chain-of-custody records, consultant invoices, communications with a consultant retained by HLF's counsel, and tax records for an HLF employee, none of which the subpoena requested. *Id.* at 2-3,

7-10. Freeway even labeled as "deficiencies" documents HLF had already produced and questions HLF had previously answered. *Id.* at 2-3.

On October 14, HLF nonetheless responded point by point in a twelve-page letter, made a supplemental production in an effort to limit open issues, and again invited conferral. *Id.* Two days later, without responding to that letter or conferring about it, ***Freeway served twenty-two new subpoenas***: a second subpoena to HLF; subpoenas to three attorneys, one of whom has appeared for Plaintiff in this action; and subpoenas to eighteen vendors. Laroche Decl. ¶ 5; Ruley Decl. Ex. C. The second subpoena to HLF dispenses with any pretense of targeted discovery and asks for HLF's litigation file outright. It demands "[a]ll Communications" and "[a]ll Documents" across every TCPA matter involving Mr. Wilson since 2023; a "complete export or log" of HLF's communications with its client and co-counsel, "whether or not" privileged; HLF's timesheets and personnel and compensation records; and records of a different law firm dating to 2012. Request 19 of the Second Subpoena even demanded "[a]ll other Documents" that Freeway sought in its October 2 email and that HLF explained were outside the First Subpoena. As HLF explained in its objections, if Freeway believed HLF's production was deficient, the proper course was to confer and, if necessary, present that dispute to the Court, not to serve a new subpoena seeking the same materials and more. Ruley Decl. Ex. E at 2, 33-34.

The vendor subpoenas also sought information on HLF clients other than Mr. Wilson. Ruley Decl. Ex. L. HLF promptly objected. On October 22, HLF wrote to Freeway explaining that several of the vendor subpoenas sought records for two telephone numbers belonging to HLF clients other than Mr. Wilson, which have no relevance to any issue in this case. *Id.* HLF asked Freeway to withdraw and reissue those subpoenas without the additional numbers or, at a minimum, to hold compliance in abeyance as to them "while we work through these issues,

including as necessary through Court intervention." *Id.* After Freeway provided its position on October 23, the parties conferred on this issue on November 2. Ruley Decl. Ex. M; Laroche Decl. ¶ 6.[1]

The same day, HLF served its responses and objections to the second subpoena. Ruley Decl. Ex. E. HLF stated that it "remains willing to confer on reasonable, targeted requests, but the Second Subpoena is improper." HLF nonetheless identified, request by request, the documents already produced that address each subject. *See, e.g.*, *id.* at 16-17, 19, 23. HLF also stated that in its view, "the most appropriate way to address the issues raised by the Second Subpoena, including its scope, is to present them to the Court." *Id.* at 4. The next day, HLF sent Freeway a draft joint email to the Courtroom Deputy doing exactly that. Laroche Decl. ¶ 7.

What Freeway did next is the subject of this response.

## II. THE NOTICE DISREGARDS THE COURT'S PROCEDURES

Freeway's conduct in filing the Notice was inappropriate. The Court has said how it wants discovery disputes to be handled. The parties confer, give the Court their positions together, and raise anything unresolved by telephone, not through "a motion to compel and a briefing schedule." Aug. 19 Hr'g Tr. at 80:9-81:2; *see* Hon. Michael J. McShane, Discovery Issues, https://www.ord.uscourts.gov/index.php/court-info/our-judges/judge-mcshane (last visited Nov. 9, 2026). Freeway's own papers confirm as much. Freeway acknowledges that it had "planned to bring all open disputes with HLF, Wilson, and referral counsel to the Court together by status report, as the Court directed." Notice at 22; Aug. 19 Hr'g Tr. at 80:9-81:2.

---

[1] Freeway contends that HLF never responded to its October 23 email, but HLF responded to each point during the parties' November 2 meet and confer. Laroche Decl. ¶ 6.

HLF followed that procedure, and Freeway said it would too. On November 3, HLF circulated a draft joint email to the Courtroom Deputy setting out HLF's position. In it, HLF asked that the vendor subpoenas be held in abeyance only "as to the non-Wilson information," and it asked for Freeway's position. Laroche Decl. ¶ 7. Freeway replied that it would "work on this today/tomorrow and circulate our position." *Id.* On the morning of November 6, Freeway's counsel wrote that Freeway "will get you our position today" and would "send our statement shortly." *Id.* None of these messages mentioned a filing. Freeway sent its position at 6:14 p.m. ET. Less than an hour later, without notice to HLF, Freeway filed the Notice.

The filing was planned, not a last-minute decision. The position statement Freeway sent HLF at 6:14 p.m. already cited "Freeway's Notice of New Evidence, ECF No. 34," before the Notice existed on the docket. Laroche Decl. ¶ 8. So when Freeway assured HLF its position was coming, it already intended to file the Notice and chose not to say so. The Notice is also nothing new. It makes the same points as the position statement at greater length: the settlement figures, the IP-address opt-in, and the claimed "doubling" of opt-ins. The Notice also makes the same requests: deny abeyance, compel compliance with the Second Subpoena, depose HLF, and inspect Mr. Wilson's devices. *Compare id., with* Notice at 1-2, 13-14, 20-22.

This timing is all the more suspect because Freeway cancelled a meet and confer on October 29, 2026, because, its counsel said, it needed more time to prepare a response to HLF's October 14, 2026 letter. In truth, Freeway wanted more time to draft the Notice. Indeed, to this day, Freeway has not responded to HLF's October 14 letter.

The Notice cites no rule that authorizes it, and Freeway neither conferred about it nor sought leave. The Notice is Freeway's side of a pending discovery dispute, filed as a 20-plus-page brief with two declarations and dozens of exhibits. Filing it this way, while telling HLF a joint

submission was underway, is gamesmanship. Freeway also has deprived the Court of the joint presentation of positions it asked for.

## III. THE COURT SHOULD NOT CREDIT THE NOTICE'S ACCUSATIONS UNTIL HLF IS ABLE TO RESPOND

The Notice purportedly asks for no relief, but its aim is clear. To persuade the Court, before HLF has been heard, that HLF engaged in misconduct. HLF urges the Court not to draw any conclusions on this record. The Notice is filled with misstatements, overstatements, and hyperbolic allegations of fraud without supporting evidence. HLF will address Freeway's accusations in full if given the opportunity and its silence on any point should not be taken as agreement. But a few examples show why the Court should exercise caution.

*First*, Freeway has misrepresented HLF's conduct in discovery (see *supra* Part I) and what HLF is requesting from the Court. Freeway tells the Court that HLF wants a declaration that "'no further discovery' is warranted" and seeks to "shut down subpoenas to third parties who are eager to cooperate." Laroche Decl. ¶ 8; *see* Notice at 20. That is not HLF's position. HLF's proposed joint email said that "no further discovery ***from HLF***" is warranted. Laroche Decl. ¶ 7 (emphasis added). Freeway dropped the last two words. On the vendor subpoenas, HLF asked for abeyance only to the extent they sought information about HLF clients other than Mr. Wilson. HLF has not sought any relief concerning any other discovery.

*Second*, Freeway claims HLF defied the August 24 Order by failing to produce Mr. Wilson's settlement agreements. Notice at 15; *see id.* at 15-16. Freeway omits that it agreed to the very process HLF followed when producing these agreements. Many of the agreements contain confidentiality provisions protecting the settling parties, and so HLF gave those parties notice so they could raise any objection before production. Freeway confirmed in writing on

September 18 that it would "not assert that HLF did not fulfill its production obligations by withholding those agreements while the objecting parties confer with Freeway or raise any issues with the Court." Laroche Decl. ¶ 3. HLF then produced each agreement as soon as the settling party confirmed it did not object. Having agreed to this process, Freeway cannot now tell the Court that HLF violated its Order by following it, particularly given that the Court encouraged the parties to work together to narrow areas of dispute.

*Third*, the Notice grossly misstates its main piece of "new evidence" purportedly showing lead generation fraud. To be clear, discovery has not shown evidence of lead generation fraud. Freeway claims that web-form submissions using Mr. Wilson's number "nearly doubled" once he retained HLF and then fell back to baseline after Freeway raised fraud. Notice at 1, 13-14; Watstein Decl. ¶¶ 32-35. To get there, Freeway measures the "HLF period" from October 4, 2024 through December 2025. Notice at 13. That 15-month window starts and ends in the fourth quarter, so it captures two holiday seasons when opt-ins are at their highest. Indeed, submissions on Mr. Wilson's number have peaked in the fourth quarter since long before HLF was involved: the fourth quarters of 2020 and 2021 each had as many submissions as the fourth quarter of 2024. Freeway's comparison reflects the calendar it chose, not anything Mr. Wilson or HLF did. *See* Watstein Decl. Ex. I.

*Finally*, Freeway repeats its claim that Mr. Wilson's attorneys received the majority of settlements. But Freeway treats the size and allocation of negotiated settlements as evidence of misconduct without establishing a basis for that inference. These settlements were negotiated by litigation counsel (not HLF) and were reached with represented defendants who knew how the proceeds would be allocated, sometimes through formal mediation. That includes defendants represented by Freeway's own counsel here. Laroche Decl. ¶ 4. HLF told Freeway all of this

twice in writing. It also explained that the figure Freeway focuses on combines all counsel and all costs, while HLF's own interest in the filed matters was a 30% share of the attorneys' fee component. *Id.* The Notice ignores this correspondence. Beyond that, Freeway, which was not a party to those settlements, cannot substitute its own views for the terms the parties to those agreements negotiated and accepted.

This is not the first time Freeway has obtained documents from HLF and taken them straight to the Court without conferring or understanding the documents. In June, while the parties were still conferring about the first subpoena, HLF produced Mr. Wilson's engagement agreement. Rather than raise any questions about it with HLF, Freeway filed it in the underlying action within days, relying on its power-of-attorney provision to accuse HLF of controlling Mr. Wilson's claims and acting as a "shadow firm." *Wilson v. Freeway Ins. Servs. of Am., LLC*, No. 25 Civ. 1869 (MC) (D. Or.), ECF Nos. 19, 24. HLF told Freeway at the time that those accusations were unfounded, *see In re Subpoena to Heidarpour Law Firm, PLLC*, ECF No. 1, Ex. G, and then told the Court the same thing in its motion to quash, *id.*, ECF No. 1, Mem. at 2-3; *see* ECF No. 21 at 3 ("[T]here is no evidence of fraud."). Discovery has since proven it. HLF's September 23 production included SignNow audit logs for 131 engagement agreements and nearly 70 settlement agreements showing that Mr. Wilson received, reviewed, and signed every agreement, including the August 2025 engagement agreement, from his own account and from IP addresses distinct from HLF's.

Freeway now complains that HLF did not answer its questions about the signatures quickly enough, claiming that "[f]or months HLF and Wilson's counsel refused to answer, resulting in enormous expense to put the issue to rest." Notice at 22. That is not accurate, but it is also revealing because it shows how Freeway approaches discovery. Freeway receives a document, builds a serious accusation around it, and presents that accusation to the Court. When HLF

answers, Freeway does not accept the answer. Instead, it demands every document that might disprove HLF's position.

That is what happened after HLF's September 23 production. HLF produced nearly 2,000 pages of documents, a 7,152-entry privilege log, and the signature records refuting Freeway's central accusation. Laroche Decl. ¶ 2; Ruley Decl. Ex. B at 1. Freeway did not engage with that showing. Instead, it demanded the full contents of Mr. Wilson's iCloud collection, which by Freeway's own count holds more than 880,000 text messages and voicemails, because it might theoretically show lead generation fraud or some other misconduct. Ruley Decl. Ex. B at 1, 9. Under that approach, HLF bears the burden of disproving each new accusation, and discovery never ends. The Notice follows the same pattern. HLF has answered Freeway's accusations before, and HLF asks only for the same opportunity here.

## CONCLUSION

Based on the foregoing, HLF respectfully requests that the Court (i) permit HLF to respond to the Notice by November 16; (ii) schedule a conference afterward to address discovery; (iii) hold Freeway's third-party subpoenas in abeyance to the extent they seek information about individuals other than Mr. Wilson; and (iv) decline to rule on HLF's conduct until HLF has responded.

DATED: November 9, 2026

Respectfully Submitted,

*/s/ Neal Katyal*
Neal Katyal
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

Matthew J. Laroche (*pro hac vice*)
Peter Farag (*pro hac vice*)
Isabelle Laskero (*pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219

*Attorneys for Heidarpour Law Firm, PLLC*