Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
Rebecca Rhym (*Pro Hac Vice*)
rrhym@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000

*Attorneys for Defendant Freeway Insurance Services of America, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC. | Case No. 6:26-mc-00830-MC |
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC,<br><br>Defendant. | **FREEWAY'S RESPONSE TO HLF'S REQUEST FOR RELIEF (ECF NO. 38)** |

## I. Introduction

As this Court put it, "[t]he history of dismissing cases when there's any pushback about what's going on here [] I think, speaks for itself." Aug. 19, 2026 Hr'g Tr. 77:3–5. HLF, unfortunately for it, cannot dismiss Freeway's third-party vendor subpoenas. It has no standing to quash them either. They weren't issued to HLF, and call for none of HLF's information. They were issued to other third parties in *Wilson*, where neither HLF nor its counsel has appeared. None of the vendors who received them moved to quash either. Many of them are eager to produce because they have been targets of HLF's scheme too. Ruley Supp. Decl. ¶ 3. So HLF tries the only thing left. In a response brief filed in a miscellaneous proceeding about a different subpoena, it asks the Court to pause the vendor subpoenas issued in *Wilson* so it can keep more damning evidence from coming out while HLF decides what to do next to control the damage.

Setting aside its lack of interest in these subpoenas or standing to object to them, HLF also didn't file a motion or include the conferral certification LR 7-1(a) requires. It buried the request in a response brief instead, which LR 7-1(b) prohibits. And it did all this while holding hostage the joint email to the Courtroom Deputy that already has both sides' positions. HLF had Freeway's position on Friday and never sent the email. When Freeway asked for HLF's final draft, HLF withdrew its position and asked that the joint email say only that HLF's position "is set out in its filing of today, ECF No. 38." Ruley Supp. Decl. ¶¶ 8–9 & Ex. 2. HLF accuses Freeway of skipping the Court's procedure, but HLF's own email shows HLF is the one that skipped it.

HLF also calls Freeway's Notice an unauthorized brief. Yet HLF's first filing after its lawyers appeared in this Court was an unsolicited "Notice." ECF No. 33. That notice sought no relief and argued HLF's side of a hearing HLF knew about and chose not to attend, instead of

letting a third-year lawyer with a 10% stake take the fall for it. ECF Nos. 18, 33 at 2; Wilson ECF No. 26-1 ¶ 5. Freeway didn't even respond to that notice, because there was nothing to respond to.

Freeway's Notice likewise asked for nothing. The Court ordered "robust discovery to determine exactly what is going on with the Heidarpour Law Firm and this litigation." It also stayed Wilson's thirteen other cases "until I get a better idea of these claims." Tr. 78:22–79:9. The Notice told the Court what that discovery has shown and when Freeway will move for sanctions. How else would the Court learn the information it said it wanted to have a "better idea of"?

Rather than taking the path Freeway took to HLF's notice and letting the evidence speak for itself, HLF filed eleven pages, almost none of which address the evidence. It doesn't mention the nearly $8 million in individual settlements Wilson's lawyers extracted or that the lawyers took 96%. It doesn't mention the release of claims against HLF and Heidarpour that Wilson had to sign to get paid. It doesn't mention that Wilson signed HLF's retainers from the same IP address that opted his number into the texts he sued over in *MAH Group*. It doesn't address the evidence of fraud in *Mia*, *Barnes*, or *Rashley*. And it doesn't explain why HLF won't produce or log the messages through which most of Wilson's post-retention claims reached it. *See* ECF No. 34, Parts I, II.A–B, III. Nor does it explain why, after promising the Court financial records that would "allow the Court to evaluate the economics of these arrangements," ECF No. 33 at 4–5, HLF now refuses to search for its time and fee records. Ruley Decl. ¶ 7 & Ex. E, ECF No. 36.

Freeway does not object to HLF responding to the Notice by November 16, or to the conference HLF requests. But the Court should deny HLF's request to pause subpoenas to willing third parties in a case HLF isn't part of and that it wouldn't have standing to object to if it were.

## II. Argument

### A. HLF Sat on the Vendor-Subpoena Dispute, Then Called It Urgent

Freeway served the vendor subpoenas on October 16. They seek records of web-form submissions using Wilson's number and the numbers of two co-plaintiffs who sued alongside him through the same HLF counsel, Sara Taylor and Antwane Johnson, and of texts sent to those numbers through the vendors' platforms. Ruley Decl. ¶ 20. Those records show when each number was signed up and, depending on the vendor, by whom and from where. That is the forensic evidence of whether the opt-ins behind HLF's claims were manufactured. ECF No. 34, Part II.D.

Six days later, on October 22, non-party HLF claimed that the Taylor and Johnson numbers had no relevance to this case, asked Freeway to withdraw the vendor subpoenas and reissue them without those numbers, and asked Freeway to hold compliance in abeyance "while we work through these issues, including as necessary through Court intervention." Ruley Decl. ¶ 21 & Ex. L. Freeway gave its position the next day: the records are relevant to show how lead submissions increased after the relationship with HLF started, HLF has no standing to challenge subpoenas to third parties, and Freeway would not withdraw them. *Id.* ¶ 22 & Ex. M. HLF never responded in writing.

At HLF's request, the parties conferred on November 2, the first date and time HLF proposed. Ruley Supp. Decl. ¶ 6 & Exs. 1–2. HLF then sent its draft joint email at 7:17 p.m. on November 3, eleven days after receiving Freeway's position and after the subpoenas' objection dates had passed. Ruley Supp. Decl. Ex. 2; Laroche Decl. ¶ 7, ECF No. 39. Three days later, HLF demanded Freeway's position "today." Ruley Supp. Decl. Ex. 2. Freeway stopped drafting the Notice it had been working on for weeks and sent its position that day. *Id.*

But once HLF had both sides' positions, it did not send the email that it claimed was urgent. Instead, unlike Freeway, which filed nothing in response to HLF's notice and sought no relief in its own Notice, HLF filed an eleven-page response that asked for relief. But not on behalf of itself. Instead, it asked the Court to block willing third-party subpoena recipients in another case where HLF is neither a party nor counsel from producing information that could be damaging to it. In other words, the same relief HLF described in the joint email it was sitting on, but with *only its side* before the Court. ECF No. 38 at 3, 11. HLF then goes on to accuse Freeway of "depriv[ing] the Court of the joint presentation of positions it asked for." *Id.* at 8.

HLF took eleven days to answer Freeway's position on the vendor subpoenas, gave Freeway fewer than three to answer HLF's, and now tries to spin that timeline as Freeway's gamesmanship while itself sitting on the joint presentation. Freeway then asked HLF to send its final draft of the joint email by 7 p.m. on November 9, or Freeway would send it with both sides' positions. Ruley Supp. Decl. ¶ 9 & Ex. 2. Freeway assumed HLF would make more changes and then submit the dispute to the Court via the mechanism the Court identified.

It didn't. Instead, after asking for Freeway's position urgently, it said it wasn't going to submit its position through the joint email at all. It withdrew its prior draft and asked that its portion of the joint email say only this:

> HLF's Position. Freeway disregarded the Court's procedures for discovery disputes by filing Friday's Notice, ECF No. 34. HLF's position on those disputes, including the third-party subpoenas, is set out in its filing of today, ECF No. 38. HLF respectfully requests the relief set forth in that filing and will make itself available at the Court's convenience.

Ruley Supp. Decl. Ex. 2 (Nov. 9, 2026, 6:31 p.m. email).

As HLF knows, the Court asked for discovery disputes to come to it by joint email and a telephone conference. Tr. 80:9–81:2. Freeway followed that path and gave HLF its position to

submit to the Court. HLF rejected it and buried a request for relief in a response brief to a Notice that sought nothing, after its first filing following its lawyers' appearance here was an unsolicited notice of its own. ECF No. 33. Now it wants the joint email to say "see our brief." To quote HLF, it "disregarded the Court's procedures."

**B. HLF Has No Standing to Challenge Subpoenas to Vendors in Another Case to Which HLF Is Neither a Party Nor Counsel**

HLF asks the Court to pause compliance as to the numbers of Taylor and Johnson, HLF regulars who sued alongside Wilson through the same counsel. Ruley Decl. ¶ 20. But a non-recipient may not challenge a subpoena served on a third party unless it claims a personal right or privilege in the documents sought. *Wickersham v. Eastside Distilling, Inc.*, 692 F. Supp. 3d 1052, 1066 (D. Or. 2023). That rule applies with more force to HLF, which is not even a party to or counsel in the *Wilson* case. HLF identifies no privilege or right in the records, which belong to vendors who are willingly responding to those subpoenas. No one has moved to quash them—*not even Wilson*.

And not that it matters given HLF's lack of standing, the records bear directly on the question the Court ordered discovery to answer: whether the opt-ins behind HLF-generated claims were manufactured. The one vendor that has responded produced records showing the same pattern for Taylor as for Wilson: a surge in opt-ins during the HLF period, and a drop to the baseline after Freeway's counsel called fraud. Watstein Decl. ¶¶ 32–35, ECF No. 35. That goes straight to the Court's concern about "whether criminal fraud is taking place," Tr. 42:21–22, and with "the manner in which HLF may be working with Plaintiff to bring this and similar purported class actions," ECF No. 28 at 4. HLF promised the Court "forensic data" showing that it "did not manufacture claims." ECF No. 33 at 4. It cannot now ask the Court to stop that data from arriving.

Setting all that aside, the Court "may deny any motion that fails to meet [LR 7-1(a)'s] certification requirement." LR 7-1(a)(3). HLF's request, made in a response brief, unsurprisingly does not meet it.

**C. HLF's Few Points on the Evidence Are Wrong**

HLF says the Notice is "riddled with misrepresentations." ECF No. 38 at 2. The few examples it offers show exactly the opposite.

*First*, HLF says Freeway measured the "HLF period" from October 4, 2024 through December 2025, a window that "captures two holiday seasons." *Id.* at 9. That is not the window Freeway used. The Notice and the Watstein Declaration compare April 2020 through October 3, 2024 with October 4, 2024 through May 15, 2026. ECF No. 34, Part II.D; Watstein Decl. ¶ 34. The baseline covers more than four years and includes four fourth quarters of its own. And the "holiday season" cannot explain Sara Taylor's number, which followed the same rise on her own timeline. Watstein Decl. ¶ 35.

*Second*, HLF says the SignNow audit logs show that Wilson signed his agreements "from IP addresses distinct from HLF's." ECF No. 38 at 10; Laroche Decl. ¶ 2. Freeway agrees. One of those IP addresses is the address from which Wilson's number was opted in to the texts he sued over in *Wilson v. MAH Group, Inc.*, No. 6:25-cv-00855-MC (D. Or.). Watstein Decl. ¶ 21; ECF No. 34, Part II.B. That proves what Freeway has said all along: some of Wilson's opt-ins are fraudulent.

*Third*, HLF says Freeway agreed to the process HLF used to produce the settlement agreements. ECF No. 38 at 8–9. Freeway agreed not to fault HLF while objecting parties conferred. Laroche Decl. ¶ 3. It did not agree that HLF should invite objections the agreements did not provide for or deceive Freeway into believing the settlement agreements required more than they did.

Indeed, every agreement HLF has since produced permits disclosure under a court order without the other side's consent. Ruley Decl. ¶ 10. HLF created the objections it now says Freeway agreed to wait out, imposing yet more expense on the only defendant willing to spend the enormous resources necessary to out HLF's scheme.

HLF also says Freeway dropped "from HLF" when quoting HLF's draft position that "no further discovery" is warranted and claims it "has not sought any relief concerning any other discovery." ECF No. 38 at 8. That is more head-scratching misdirection. As discussed above, HLF moved in its response brief filed *today* to pause subpoenas issued to *third parties in another case*, in which HLF has absolutely no interest. And its own draft joint email asked the Court to decide whether Freeway "may obtain further discovery from HLF through a second subpoena *and from twenty-one other non-parties*," three of them Wilson's lawyers, each represented by its own counsel. Ruley Supp. Decl. ¶ 10 & Ex. 3 at 1. HLF refused to confer about any of Freeway's second subpoena topics because it disagrees with Freeway about the scope of discovery generally. Watstein Decl. ¶ 25. And it has coordinated with others to ensure that Freeway gets as little as possible from everyone. And it stonewalled almost entirely on its own discovery obligations: it objected to Freeway's first subpoena on grounds like "demand emails aren't demand letters" and, when Freeway served a second subpoena asking for "demand emails" as a result, it refused to search for documents in response to 18 of the 19 requests. Ruley Decl. Ex. B at 3–4; *id.* ¶ 7 & Ex. E. Freeway's description of HLF's position on discovery is accurate.

**D. HLF Refused to Confer, and Disingenuously Tries to Turn That on Freeway**

HLF also tries to muddy the water by claiming Freeway did not confer in good faith. Freeway will not go tit for tat with HLF, but it must respond to two points because they are indicative of HLF's attempt to distract from the merits with false "blame the victim" statements.

*First*, HLF says Freeway cancelled its October 29 conference to buy time to draft the Notice, rather than meeting to discuss the vendor subpoenas. ECF No. 38 at 7. HLF knows better. *Freeway* requested and set that conference to address deficiencies in *HLF's* production. That's the only thing that conference was about. Freeway moved it because Mr. Ruley's child was sick, as HLF's own counsel acknowledged in writing three days before HLF filed its brief. Ruley Supp. Decl. Ex. 2. HLF then suggested pushing it back *even further* so the parties could first review HLF's responses to the second subpoena. *Id.* ¶¶ 4–5 & Ex. 1. In the meantime, Mr. Watstein accommodated HLF's separate request to discuss the vendor subpoenas at the first date HLF proposed—even though Mr. Ruley wasn't able to attend that either because he was still attending to his sick child. *Id.* ¶ 6. Telling the Court that a sick child was cover for delay in resolving the vendor subpoena issue was both wrong and dishonest.

*Second*, HLF claims Freeway hasn't adequately conferred because it hasn't responded to its October 14 letter about the first subpoena to HLF "to this day." ECF No. 38 at 7. But as HLF knows, it is the one that outright refused to confer about its deficient discovery responses. Freeway put its concerns about HLF's responses to the first subpoena in writing on October 2. Ruley Decl. ¶ 3 & Ex. A. Then, two days after HLF's letter, given HLF's evasive interpretations of the first subpoena, Freeway served a second subpoena for the documents the letter said fell outside the first, and four days after, Freeway asked to confer about the letter. *Id.* ¶ 6 & Ex. D; Ruley Supp. Decl. ¶ 4 & Ex. 1.

At the November 2 conferral, HLF "did not want to confer about the substance of those requests at all." Watstein Decl. ¶ 25. It just referred to its written responses, which said HLF "will not" search for anything in response to eighteen of nineteen requests. Ruley Decl. ¶ 7 & Ex. E. When asked how that was consistent with HLF's representation to produce "forensic evidence"

that went to whether fraud occurred, HLF's counsel had no response. It then declined to discuss any specific requests or objections and said it would go to the Court with a dispute email. It has since backed out of even doing that. Ruley Supp. Decl. ¶ 9 & Ex. 2. In any event, a party that refuses to discuss discovery at all cannot then claim the other party failed to confer.

## III. Conclusion

Consider what HLF asks. A non-party that has never appeared in *Wilson*, in a response brief that is not a motion, asks the Court to stop willing third parties from producing records that do not belong to HLF. The only reason is what those records already show. The Court should deny HLF's request to hold the vendor subpoenas in abeyance and let the vendors produce. Freeway has not asked the Court to make findings about HLF's conduct. It will seek any findings in its sanctions motion, on the full record HLF has so far refused to provide and sought to block.

Dated: November 9, 2026.

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*Pro Hac Vice*)
ryan@wtlaw.com
James M. Ruley (*Pro Hac Vice*)
jruley@wtlaw.com
Rebecca Rhym (*Pro Hac Vice*)
rrhym@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 782-0695

Timothy J. Fransen, OSB No. 073938
tfransen@cosgravelaw.com
**COSGRAVE VERGEER KESTER LLP**
900 SW Fifth Avenue, 24th Floor
Portland, Oregon 97204
Telephone: (503) 323-9000
*Attorneys for Defendant Freeway Insurance Services of America, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 9, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Ryan D. Watstein*
Ryan D. Watstein