**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC.<br>______________________________<br>CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FREEWAY INSURANCE SERVICES OF AMERICA, LLC,<br><br>Defendant. | Case No.: 6:26-mc-00830-MC<br><br>Underlying action:<br><br>United States District Court for the District of Oregon Eugene Division<br><br>Case No. 6:25-cv-01869-MC |

**SUPPLEMENTAL DECLARATION OF MATTHEW J. LAROCHE**

Matthew J. Laroche, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am a partner at Milbank LLP and counsel for non-party Heidarpour Law Firm, PLLC ("HLF"). I submit this supplemental declaration in support of HLF's Response to Defendant's Notice of New Evidence (ECF No. 34). Unless otherwise stated, I have personal knowledge of the facts stated below, and if called to testify, I could and would testify competently to them.

2. Following the Court's August 19, 2026 hearing and August 24, 2026 Order (ECF No. 28), my firm took several steps to assist HLF in responding to the Court's concerns and Freeway's First Subpoena. Among other things, my firm engaged Ankura Consulting Group, a

global expert services firm, to collect data from HLF's computers and phones. Ankura subsequently collected data from several HLF employees, including Andrew Heidarpour, Dana Oliver, and Farideh Heidarpour, which amounted to hundreds of thousands of documents. Processing that collection required approximately 80 hours of litigation-technology support. Ankura also reviewed and analyzed forensic data collected in November 2024 by CFR for Mr. Wilson's case.

3. My firm also had approximately 16 attorneys involved in reviewing data collected through Ankura and directly from HLF. These attorneys reviewed thousands of internal communications, documents, and forensic data, which took approximately 240 hours of attorney time.

4. The First Subpoena called for the production of approximately 70 settlement agreements in Mr. Wilson's cases. Each of Mr. Wilson's settlement agreements contains a confidentiality provision, and many also include a notice provision that requires notifying the counterparties prior to production. As a result, in September 2026, my firm spent several weeks notifying counterparties to those settlements and, at times, addressing questions about the production. On several occasions, settling parties objected to the production of the settlement agreements or asked for more time to consider how to proceed.

5. My firm spent approximately 6 hours conferring with those counterparties' counsel. HLF also proposed the District of Oregon's form protective order to protect the settlement counterparties and HLF's clients. My firm spent many hours addressing Freeway's objections to that form's standard provisions.

6. HLF kept Freeway informed about the notices it was sending to the counterparties. On September 17, 2026, HLF explained that it would share a version of the interim protective

order with the settlement counterparties and asked Freeway to confirm that, to the extent a third party objected to production of its settlement agreement pending entry of a final order or for any other reason, Freeway would not object to an extension of HLF's September 23 production deadline to allow the Court to address any such objection. On September 18, 2026, Freeway agreed in writing that, to the extent it could not alleviate a counterparty's concerns, it did not object to HLF holding off on producing those documents until the Court weighed in on that dispute.

7. HLF produced all of the settlement agreements consistent with that process. HLF's September 23, 2026 production also included three settlement agreements in which Watstein Terepka LLP, counsel for Freeway in this matter, represented the settling defendant. Each agreement lists Watstein Terepka LLP as the defendant's counsel for notices. Each also states the amount of Mr. Wilson's recovery and provides that the rest of the settlement sum is attorneys' fees and costs for Mr. Wilson's counsel.

8. On November 2, 2026, the parties conferred regarding Freeway's third-party vendor subpoenas. During that conferral, HLF responded to each point in Freeway's October 23, 2026 email and reiterated its request, first made in its October 22, 2026 letter, that compliance be held in abeyance only as to the two telephone numbers belonging to HLF clients other than Mr. Wilson. When Freeway's counsel asked what discovery the Court had in mind when it ordered "robust discovery," I explained that the discovery HLF had already provided was robust and I did not believe the Court had in mind that HLF would be required to produce or log every document in its litigation file for Mr. Wilson.

9. On November 5, 2026, the parties conferred regarding discovery. During that conferral, HLF's counsel explained that the Second Subpoena was not what the Court had authorized, that Freeway's requests repeated demands HLF had already answered, and that the

requests reflected that Freeway had not reviewed HLF's production or its October 14 letter. I also explained that if Freeway could identify a limited set of specific documents that would resolve the Second Subpoena, HLF would consider producing them, and I gave the example of pre-suit demand emails as a possible area of compromise. I also said that if Freeway's view of appropriate discovery was substantially broader, the parties should raise the issue with the Court. The parties also discussed HLF's confidentiality designations, and HLF left the conferral understanding that the parties would continue working to resolve them.

10. Attached as **Exhibit A** is a true and correct copy of the subpoena Freeway served on HLF dated May 20, 2026 (the "First Subpoena").

11. Attached as **Exhibit B** is a true and correct copy of HLF's September 23, 2026 letter to Freeway's counsel accompanying HLF's production.

12. Attached as **Exhibit C** is a true and correct copy of an email from James Ruley, counsel for Freeway, to counsel for HLF dated October 2, 2026.

13. Attached as **Exhibit D** is a true and correct copy of HLF's October 14, 2026 letter to Freeway's counsel. As that letter explains, in searching for the cease-and-desist letters called for by the First Subpoena, my firm ran targeted searches for language common to those letters, manually reviewed thousands of documents, and then ran a further search using different terms. That further search surfaced additional letters, which HLF produced with its October 14, 2026 letter. Freeway never responded to the October 14 letter in writing and served the Second Subpoena.

14. Attached as **Exhibit E** is a true and correct copy of the second subpoena Freeway served on HLF dated October 16, 2026 (the "Second Subpoena").

15. Attached as **Exhibit F** is a true and correct copy of HLF's October 22, 2026 letter to Freeway's counsel regarding Freeway's third-party vendor subpoenas.

16. Attached as **Exhibit G** is a true and correct copy of an email from Ryan Watstein, counsel for Freeway, to counsel for HLF dated October 23, 2026.

17. Attached as **Exhibit H** is a true and correct copy of an email exchange between counsel for Freeway and counsel for HLF dated October 29 and 30, 2026, regarding the parties' scheduled meet-and-confer.

18. Attached as **Exhibit I** is a true and correct copy of HLF's Responses and Objections to the Second Subpoena, served November 2, 2026.

19. Attached as **Exhibit J** is a true and correct copy of an email from counsel for HLF to counsel for Freeway sent at 7:17 p.m. on November 3, 2026, attaching HLF's proposed joint email to the Courtroom Deputy.

20. Attached as **Exhibit K** is a true and correct copy of an email chain between counsel for HLF and counsel for Freeway dated November 6 through November 9, 2026, including HLF's 5:58 p.m. email of November 6, 2026, regarding the two outstanding settlement agreements and HLF's 12:58 p.m. email of November 9, 2026, producing them.

21. Attached as **Exhibit L** is a true and correct copy of an email chain between counsel for HLF and counsel for Freeway dated November 3 through November 9, 2026, regarding the parties' positions for the joint email to the Courtroom Deputy.

22. Attached as **Exhibit M** is a true and correct copy of Freeway's November 9, 2026 email to the Courtroom Deputy.

23. Attached as **Exhibit N** is a true and correct copy of a post by Ryan D. Watstein, counsel for Freeway, on his public LinkedIn profile, published on or about August 20, 2026, the day after the August 19, 2026 hearing in the underlying action.

24. Attached as **Exhibit O** are charts and tables prepared at my direction summarizing the Attentive records attached as Exhibit I to the Declaration of Ryan D. Watstein (ECF No. 35-9). The charts count each record once, by its first opt-in date, and exclude the four records that contain no opt-in date, consistent with Watstein Decl. ¶ 33.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: November 16, 2026

Matthew Laroche