# Exhibit B

Milbank
**MATTHEW LAROCHE**
*Partner*
55 Hudson Yards | New York, NY 10001-2163
T: +1 (212) 530-5514
mlaroche@milbank.com | milbank.com

September 23, 2026

**VIA EMAIL**

Ryan D. Watstein
James Ruley
Watstein Terepka LLP
75 14th Street NE, Ste. 2600
Atlanta, Georgia 30309

Re: *In re Subpoena to Heidarpour Law Firm, PLLC*, 26-mc-830 (D. Or.).

Dear Ryan and James:

We write on behalf of non-party Heidarpour Law Firm, PLLC ("HLF") to produce documents and provide information in response to Freeway's May 20, 2026 subpoena (the "Subpoena") and the Court's August 24, 2026 Order (Dkt. 28). The enclosed production contains documents bearing Bates numbers HLF_Freeway_0000015 through HLF_Freeway_0002006, which are being produced subject to the interim protective order. Appendix A identifies the documents responsive to each of the open Subpoena requests. This letter follows HLF's June 11 and June 18, 2026 productions and its various responses to Freeway's informal requests for information on June 23 and September 9, 2026.

As we explained from the outset of this process, the accusations of criminal fraud and related wrongdoing leveled against HLF in connection with Mr. Wilson's cases are unfounded. This production reinforces that position. As outlined below, the production directly addresses each of Freeway's accusations against HLF, including that HLF allegedly manufactured claims, controlled Mr. Wilson's claims, or otherwise abused the class certification process. To address Freeway's accusations, HLF is producing materials beyond those sought in the Subpoena. Based on the scope of the production, HLF requests that Freeway review these materials and confer with HLF before raising any further issues concerning HLF with the Court. HLF remains willing to confer promptly on any issue and to provide additional information as appropriate.

### A. HLF Did Not Manufacture Claims

Freeway's accusation that HLF committed criminal fraud by manufacturing claims on Mr. Wilson's behalf is simply not true. As you know, HLF produced documents shortly after being

served with the Subpoena showing that it did not have any contact with Mr. Wilson until well after Freeway sent the messages at issue in this case. And well before that production, Freeway acknowledged that the lead generation form was submitted by an entity (EverQuote) that is not HLF and has no relationship with HLF. Freeway has nevertheless continued to suggest that HLF was involved in criminal activity.

The privilege log produced with this letter further undermines Freeway's theory. The log reflects that HLF's work on Mr. Wilson's matters consisted of legal services: investigating potential claims, evaluating their merit, advising Mr. Wilson on his options, and coordinating with co-counsel on litigation strategy. These are the ordinary activities of a law firm representing a client—not the activities of a firm manufacturing claims.

Freeway's accusations of fraud appear to revolve around suspicions that HLF had ongoing access to Mr. Wilson's iCloud account. *See* Subpoena Request Nos. 4-7. As we explained on September 9, 2026, HLF did not have real-time access to Mr. Wilson's iCloud account or monitor his messages. In late October 2024, Mr. Wilson provided HLF with his login credentials so that HLF could facilitate the collection of Mr. Wilson's iCloud data for discovery purposes. HLF never signed into Mr. Wilson's iCloud. Instead, HLF provided the credentials to Computer Forensics Resources ("CFR"), which used them on November 18, 2024 to collect text messages and voicemails from Mr. Wilson's iCloud account at HLF's direction. *See* HLF_Freeway_0000015 (email correspondence between HLF and CFR concerning Mr. Wilson's iCloud data); HLF_Freeway_0001493 (report excerpt reflecting that iCloud data was extracted on November 18, 2024).[1]

HLF never accessed Mr. Wilson's iCloud account, and the production confirms HLF did not manipulate the iCloud data provided by CFR. CFR provided HLF with a thumb drive on November 29, 2024 containing the iCloud data on a "portable case" through Magnet Axiom, a widely used forensic collection and analysis program. An Axiom portable case can be viewed but not modified by a user. HLF is producing forensic data confirming this point, including a file listing showing that no file was modified after the delivery of the thumb drive to HLF. *See* HLF_Freeway_0001489 – HLF_Freeway_0001491; HLF_Freeway_0001495[2] (screenshots of folder structure for thumb drive showing general contents and last modified date); HLF_Freeway_0001488 (file listing for Mr. Wilson's iCloud data on the thumb drive in HLF's possession).

In sum, it is unclear what basis Freeway has for suggesting that HLF was involved in fraud. At some point, an accusation of criminal fraud leveled without evidence, maintained in the face of contradictory evidence, and repeated across court filings and open-court proceedings ceases to be

---

[1] HLF produced the first three pages of the mobile forensics report generated by Magnet Axiom sufficient to show the date of the report, the examiner who conducted the initial analysis, and the total number of files. HLF_Freeway_0001492 – HLF_Freeway_0001494. HLF also redacted Mr. Wilson's password to his iCloud account as personal identifying information. HLF_Freeway_0000015.

[2] The folders shown in HLF_Freeway_0001495 show modified dates in September 2026 because Ankura navigated through the folders to take screenshots of the underlying file structure.

legitimate advocacy. HLF has cooperated extensively with the discovery process and will continue to do so. But Freeway must stop making this accusation against HLF unless and until it has a good-faith factual basis to support it.

### B. HLF Did Not Control Mr. Wilson's Claims

Freeway has accused HLF of controlling Mr. Wilson's claims and removing all decision-making authority from him about whether to file or settle cases. Freeway's basis for this assertion is HLF's initial 2024 engagement letter with Mr. Wilson, which contains a power of attorney provision that has become the feature of Freeway's arguments. Freeway's theory seems to be that HLF invoked this provision to execute documents on Mr. Wilson's behalf and otherwise control his claims. As we explained on September 9, HLF did not invoke any provision of the 2024 engagement letter to sign anything on Mr. Wilson's behalf. The production reinforces that Freeway's theory is not true.

As an initial matter, Freeway seems to believe that HLF added the power of attorney provision in its initial agreement with Mr. Wilson as part of a scheme to defraud the court system. There is no truth to that. By way of background, when Mr. Heidarpour was in law school, he served as a clerk to Richard J. Daschbach, who was then serving as Chief Judge of the Federal Workers Compensation Appeals Board. After retiring, Mr. Daschbach founded Legal Advocacy for Victims LLP, which was a consumer rights firm that handled TCPA claims and for which Mr. Heidarpour worked prior to becoming a licensed attorney. Mr. Daschbach used an engagement letter for firm clients that was nearly identical to the one Freeway takes issue with and which included the same power of attorney provision. When Mr. Heidarpour founded HLF, he simply continued to use the same agreement that Mr. Daschbach had drafted and used for firm clients. There is nothing nefarious about that, and HLF certainly did not adopt the language to engage in fraud or unethical conduct.

Regardless, the production includes an extensive privilege log that underscores the nature and depth of HLF's attorney-client relationship with Mr. Wilson. The log reflects thousands of communications between HLF and Mr. Wilson or co-counsel—and substantial attorney work product generated in connection with HLF's legal work on Mr. Wilson's behalf—spanning several years. The volume of privileged material is wholly inconsistent with Freeway's theory that HLF acted as a passive intermediary with no meaningful relationship with Mr. Wilson or that Mr. Wilson was not consulted about his claims or settlements.

To the contrary, the log reflects exactly the kind of sustained, substantive attorney-client engagement one would expect of a law firm actively investigating, evaluating, and assisting a client's legal matters, as well as keeping a client informed on all material developments in a case. There are hundreds of entries reflecting communications directly with Mr. Wilson about, among other things, (i) the review of draft letters and complaints; (ii) the procedural status of cases; (iii) discovery issues including the collection, preparation, verification, and supplementation of his discovery responses; (iv) co-counsel agreements and strategy; and (v) settlement offers and counteroffers. For example, as you are aware, on January 12, 2026, Freeway offered to settle the

underlying action, but Mr. Wilson declined to accept the offer. *See* Jan. 12, 2026, Ltr. from Freeway to Andrew Perrong (Jan. 12, 2026) (offering to settle Mr. Wilson's claims); *see also Wilson v. Freeway Ins. Servs. of Am., LLC*, No. 6:25-cv-01869-MC (D. Or. 2025), Dkt. 29, Declaration of Chet Wilson, ¶ 25 (stating that he decided to reject Freeway's settlement offer). The log includes entries confirming that the offer was shared with Mr. Wilson and he rejected it.

The production also includes audit logs confirming that Mr. Wilson signed each of the co-counsel engagement letters and settlement agreements. HLF_Freeway_0000091 – HLF_Freeway_0000792; HLF_Freeway_0001537 – HLF_Freeway_0002006. Each log is a chronological record of actions taken on the document—the invitation being sent, the document being opened, text being entered, the signature being applied, the document being saved, and the executed copy being delivered to each party. For each such action, the log records the authenticated user account that performed it, the date and time to the second, the application used, and the originating IP address.

The logs for each agreement reflect that HLF's account sent invitations to Mr. Wilson's account to sign the agreement, and that Mr. Wilson's account viewed, signed, and saved the document. Those events occurred from different IP addresses for every agreement. Freeway has argued specifically about the August 29, 2025 co-counsel engagement agreement, which governs the claim in the underlying case against Freeway. But the audit records show unequivocally that the agreement was signed by Mr. Wilson. *See* HLF_Freeway_0000522. The logs reflect that on August 29, 2025, HLF sent an invitation to sign the document to Mr. Wilson's gmail account, and that later that day, Mr. Wilson signed the document from an IP address distinct from the one recorded for HLF's account.

In short, the production refutes the theory that HLF signed documents on Mr. Wilson's behalf or otherwise controlled his claims. The audit logs for every agreement—including the August 2025 co-counsel engagement agreement at the center of Freeway's arguments—show that Mr. Wilson received, reviewed, and signed each document from his own account and distinct IP addresses. The privilege log independently confirms that Mr. Wilson was in regular, sustained communication with HLF about his cases, including about settlement offers, case strategy, and discovery. Whatever concerns his 2024 engagement letter's power-of-attorney provision may have raised in the abstract, the production demonstrates that HLF never exercised that authority. Mr. Wilson was not a passive bystander in his cases—he was an engaged client who signed his own agreements and was consulted throughout.

### C. HLF Did Not Abuse the Class Action Process

Freeway also has accused HLF of abusing the class certification process by filing putative class action claims and then settling them individually. This contention fundamentally misconstrues HLF's role representing Mr. Wilson. After being hired, HLF investigated unauthorized messages sent to Mr. Wilson and sent numerous letters to various entities asking that the messages stop. HLF_Freeway_0000807 – HLF_Freeway_0001487; *see generally* HLF privilege log. The letters did not threaten a class action lawsuit or even demand money. Instead,

the letters demanded that the recipient stop contacting Mr. Wilson, provide evidence of consent, and preserve relevant records for a potential TCPA claim. The overwhelming majority of these demands were resolved without the need for litigation because, for example, the recipient agreed to stop sending the unsolicited messages. On a few occasions, HLF negotiated a settlement with the recipient before a case was ever filed. *See* HLF_Freeway_0001614; HLF_Freeway_0001546.

At times when HLF's letters did not adequately resolve the issue, HLF would refer the matter to other counsel, who would appear as counsel of record and be in charge of pursuing an action if one were filed. In those circumstances, co-counsel, including HLF, executed co-counsel engagement letters governing the filed action. *See* HLF_Freeway_0000091 – HLF_Freeway_0000792. HLF's financial interest in Mr. Wilson's case under those co-counsel engagement agreements is a 30% fee calculated as a percentage of the attorney's fee component of any resolution. Of the 86 actions that were eventually filed, the overwhelming majority were settled.

Freeway has argued that the settlements disproportionately compensated Mr. Wilson's lawyers. For matters HLF referred to other counsel, HLF does not negotiate with opposing parties about potential resolutions. As the privilege log reflects, HLF is informed by litigation counsel about the terms of any potential settlement, which HLF conveys to Mr. Wilson, and Mr. Wilson has the ultimate say and authority to accept or reject any settlement. Many of these settlements were reached after formal mediation proceedings between the parties, and the amount of the settlement apportioned to Mr. Wilson or his lawyers was clearly disclosed in each of those agreements, including in the agreements agreed to by other entities represented by your firm. The privilege log also reflects that substantial legal work was conducted in connection with these matters.

Taken together, this production paints a very different picture of HLF's role than the one presented to the Court at the August 19 hearing. HLF is not the "shadow firm" orchestrating a "scheme" on federal courts. It is a small law firm that investigated unauthorized messages sent to its client, attempted to resolve them through letters that sought compliance rather than payment, and referred unresolved matters to litigation counsel who pursued claims. The financial arrangements were disclosed in writing, the settlements were reached through negotiations with counsel and through mediation, and Mr. Wilson was consulted at every stage. HLF urges Freeway to review these materials carefully before pressing its accusations further, and remains available to confer on any questions arising from this production.

Sincerely,

Matthew Laroche

cc: Neal Katyal
Peter Farag
Isabelle Laskero

# APPENDIX A

The chart below identifies what documents are responsive to each open Subpoena request. As the Court confirmed in its August 24 Order and Freeway confirmed in its September 3, 2026 correspondence, Requests 1, 2, 3, and 8 are resolved by HLF's prior productions and responses. HLF reserves all rights and objections.

| Request | Documents Produced | Bates Range (HLF_Freeway) |
|---|---|---|
| **Request No. 4**: Documents sufficient to identify each Person who accessed, monitored, reviewed, searched, downloaded, exported, or otherwise used any iCloud account, Apple account, email account, cloud-storage account, device, message database, call log, voicemail account, or other account associated with Wilson or the Subject Number. | Correspondence with Computer Forensics Resources ("CFR") regarding the iCloud collection; Ankura inventory and folder format break down for the USB drive.[1] | 0000015 – 0000085 |
| **Request No. 5**: Documents sufficient to identify the date, time, IP address, device, browser, application, user agent, geographic location, and method of access for each instance in which You or any Person acting on Your behalf accessed, monitored, reviewed, searched, downloaded, exported, or otherwise used any iCloud account, Apple account, email account, cloud-storage account, device, message database, call log, voicemail account, or other account associated with Wilson or the Subject Number. | Correspondence with CFR; Ankura inventory and last-modified metadata reflecting a single, point-in-time collection on November 18, 2024. | 0000015 – 0000085; 0001488 – 0001495 |

[1] On September 9, 2026, HLF also identified the individuals who created the backup.

| | | |
|---|---|---|
| **Request No. 6**: Documents sufficient to identify each username, login credential, authentication method, access token, shared credential, password-management tool, device, software, or platform You used to access, monitor, review, search, download, export, or otherwise use any account or device associated with Wilson or the Subject Number. | Correspondence with CFR; Ankura inventory and last-modified metadata reflecting a single, point-in-time collection on November 18, 2024.[2] | 0000015 – 0000085; 0001488 – 0001495 |
| **Request No. 7**: Documents sufficient to identify each Person who performed technical, forensic, data-mining, claim-identification, message-monitoring, intake, or lead-review work for You concerning Wilson or the Subject Number. | Correspondence with CFR regarding the iCloud collection, and privilege log reflecting HLF personnel involved in Mr. Wilson's representation.[3] | 0000015; 0001492 |
| **Request No. 9**: Documents sufficient to identify any agreement, understanding, referral arrangement, fee sharing arrangement, co-counsel arrangement, consulting arrangement, or other financial interest You have or had in any claim by Wilson against Freeway. | Engagement letters executed by Mr. Wilson with SignNow audit logs. | 0000522; 0000526 |

[2] On September 9, 2026, HLF confirmed that it did not use Mr. Wilson's iCloud password. Rather, CFR used the password to create the backup.

[3] HLF's privilege log does not purport to log every privileged communication involving Mr. Wilson in HLF's possession. HLF conducted a reasonable search for communications about Mr. Wilson's cases involving Mr. Wilson or co-counsel in email accounts in its possession, custody, and control, and constructed a log based on those results. HLF did not log attachments to those emails, which included, among other things, draft complaints, discovery responses, engagement letters, and settlement agreements. HLF reserves the right to supplement the log. HLF notes that "Heidarpourlawfirm@gmail.com" is the firm's general email account that is used, at times, to communicate with clients. This account is accessible to Andrew Heidarpour, the firm's founding partner, and Farideh Heidarpour, who works under Mr. Heidarpour's supervision and at his direction. Because the account is shared, the privilege log does not differentiate entries by individual sender. To the extent that Ms. Heidarpour sent or reviewed messages for this account, she acted at the direction and under the supervision of Mr. Heidarpour.

| | | |
|---|---|---|
| **Request No. 10**: Documents sufficient to identify any agreement, understanding, referral arrangement, fee-sharing arrangement, co-counsel arrangement, consulting arrangement, or other financial interest You have or had in any TCPA claim asserted by Wilson. | Engagement letters executed by Mr. Wilson with SignNow audit logs; settlement agreements from January 1, 2023 to the present with SignNow audit logs.[4] | 0000091 – 0000792; 0001537 – 0002006 |
| **Request No. 11**: Documents sufficient to identify each TCPA claim, demand, lawsuit, or potential lawsuit involving Wilson that You referred, assigned, transmitted, or otherwise provided to any attorney or law firm from January 1, 2023 to the present. | Engagement letters executed by Mr. Wilson with SignNow audit logs. | 0000091 – 0000792; 0000807 – 0001487 |
| **Request No. 12**: Documents sufficient to identify each letter you sent out on Wilson's behalf regarding a potential TCPA claim from January 1, 2023 to the present. | Cease-and-desist letters HLF sent on Mr. Wilson's behalf. | 0000807 – 0001487 |

[4] HLF is withholding settlement agreements for several parties that we identified via email. These parties have objected to producing the settlement agreements or asked for additional time to consider their position. As Freeway confirmed to HLF on September 18, 2026, Freeway has agreed to not assert that HLF did not fulfill its production obligations by withholding those agreements while the objecting parties confer with Freeway or raise any issues with the Court.