# Exhibit C

**From:** James Ruley
**To:** Farag, Peter; Ryan Watstein; Rebecca Rhym; Jennipher Borey
**Cc:** Katyal, Neal; Laroche, Matthew; Laskero, Izzy; Omer, Sahar
**Subject:** [EXT] Re: In re: Subpoena to the Heidarpour Law Firm, PLLC, 6:26-mc-00830-MC (D. Or.)
**Date:** Friday, October 2, 2026 9:37:29 PM

---

Peter,

We have completed our initial review of HLF's productions and its September 23 privilege log. This letter sets out our challenge to HLF's confidentiality designations and the deficiencies we have identified in the production. Please respond in writing by end of day Tuesday, October 6, and produce the materials identified below by Friday, October 9. If HLF disagrees with any point, please let us know when you are available to confer next week. We can then raise any remaining disputes with the Court at the same time as the protective-order issues. The two are related, and addressing them together is more efficient for everyone.

**Confidentiality designations**

We challenge HLF's designation of every document in its production as confidential, with two exceptions: the settlement agreements themselves, and the file listings from the CFR export (HLF_Freeway_0001488 and 0001491). Our challenge includes the settlement statements HLF produced with each agreement. For those, we propose that HLF designate the party names and identifying information as confidential, but not the settlement amounts or the split between Mr. Wilson and counsel. Under the interim agreement, HLF may designate material only if it has a "good faith basis" to call it confidential. HLF also bears the burden to show good cause for each designation and to consider whether redaction would suffice. See ¶¶ 4, 7, 14.

HLF cannot carry that burden here. It has already made these same categories of records public, and several are in the public domain. In *Robertson v. Plain-English Media*, HLF produced its master fee agreement, fourteen claim-specific retainers, its referral and fee-split agreements with co-counsel, eighteen settlement statements, and twenty-five demand letters. It produced them without any confidentiality order or designations. Those records have been on the public docket in this case since August 12 (ECF No. 42-1). No one has moved to seal them, and no one raised any confidentiality concern at the hearing. Their contents have since been cited in numerous filings and in news reports. Plaintiff's counsel also filed the Freeway fee agreement publicly and relied on it to argue adequacy (ECF No. 26-1).

The rest of the production does not warrant protection either. HLF sent the demand letters to adversaries, often copying several people at each organization, with no expectation of confidentiality. The fee agreements are form documents, identical across claims except for the target's name. The CFR emails and forensic report pages deal with price, payment, and logistics with a paid vendor. We do not object to designating the price and payment details, but the full documents do not need to be designated.

Please withdraw these designations by October 6. We are glad to discuss targeted redactions of personal identifiers such as phone numbers, email addresses, and account credentials. If HLF intends to maintain its blanket designations, please let us know when you are available to confer under paragraph 14.

**Production deficiencies**

[redacted] *binder*

The SignNow log for the [redacted] binder (HLF_Freeway_0002014–0002020) shows an 18-page envelope named "twoBinder1" with six signature events. HLF produced seven pages. Please produce the remaining pages, or explain what else the envelope contained.

*Pre-suit demands (Requests 11 and 12)*

HLF's production of pre-suit demands is incomplete. Request 12 calls for documents sufficient to identify "each letter you sent out on Wilson's behalf regarding a potential TCPA claim from January 1, 2023 to the present." Request 11 separately covers each TCPA "claim, demand, lawsuit, or potential lawsuit involving Wilson" that HLF referred or transmitted to any attorney or law firm during the same period. HLF has not produced a number of these. For example:

1. HLF's October 19, 2024 pre-suit notification to [redacted] regarding Mr. Wilson, signed by Dana Oliver.
2. HLF's August 10, 2025 pre-suit notification to [redacted] regarding Mr. Wilson, signed by Dana Oliver.
3. HLF's February 8, 2026 pre-suit notification to [redacted] regarding Mr. Wilson, signed by Dana Oliver.

These are only the omitted demands we happen to know about. Our firm represents a small fraction of TCPA demand recipients nationwide, so there are likely dozens more that have not been produced. HLF's search was plainly incomplete. Please conduct an additional search and produce all demands, whether sent by letter, email, or text, along with any related correspondence. Please also confirm in writing what sources and search terms HLF used, so we can evaluate whether the search was adequate.

*Engagement agreements (Requests 9 and 10)*

The production contains no contingent fee agreement or class action authorization for two filed cases: *Wilson v. Skopos Financial, LLC*, No. 6:25-cv-376 (D. Or.), and *Wilson v. Mountainside Fitness Acquisition LLC*, No. 2:25-cv-1481 (D. Ariz.). HLF produced some form of engagement agreement for every other filed case, so these two stand out. Please produce the agreements or confirm in writing that HLF never papered these engagements. If HLF did not paper them, please identify who did and produce any referral or fee-sharing agreement for each case, as Requests 9 and 10 require.

For three other matters, the only agreement produced is an unsigned SignNow envelope with no signature event by Mr. Wilson: [redacted]

[redacted] (HLF_Freeway_0000546), [redacted] (0000736), and [redacted] (0000614). Please produce the executed agreements for those matters or confirm that none exist. We address the underlying e-signature records below.

HLF also produced the August 29, 2025 Freeway agreement twice: once as a DocuSign version (HLF_Freeway_0000012–14) and once as a SignNow version (HLF_Freeway_0000522–25). The SignNow version includes its audit log. The DocuSign version does not. Please produce the DocuSign certificate of completion for envelope [redacted], and explain why the same agreement was executed on two platforms.

*Settlement statements (Request 10)*

Ten settlement binders contain an agreement but no settlement statement. Two are filed cases: [redacted] (HLF_Freeway_0001633) and [redacted] (0001640). Eight are pre-suit resolutions: [redacted] (0001500, with a duplicate at 0001496), [redacted] (0001546), [redacted] 0001563), [redacted] (0001606), [redacted] 0001610), [redacted] (0001614, which the audit log shows was never signed), [redacted] 0001629), and [redacted] (0001704). Every other binder includes a statement showing the gross recovery, the fees and costs deducted, and the amount paid to Mr. Wilson. Those statements identify HLF's financial interest in each claim under Request 10. Please produce the statements for these ten matters or confirm in writing that none exist. If none exist, please explain for each matter how the fee allocation was determined and disclosed to Mr. Wilson.

*Native production of e-signature and electronic records*

HLF produced its engagement agreements and settlement binders as flattened page images, each with a one-page printout of the SignNow audit log. That format strips out the information that matters most here: who placed each signature, when, and through which field. Rule 45(e)(1)(B) requires electronically stored information to be produced in the form in which it is ordinarily maintained or in a reasonably usable form. An image of a signature is not reasonably usable when the signature itself is the fact in dispute. And HLF's printout of the audit log is a summary prepared by the party whose conduct is at issue, not the platform's own record.

The production shows why the native records are needed. Ten envelopes carry a status of "Pending" and record only events by info@hlfirm.com. None shows a view, authentication, or signing event by Mr. Wilson. Three of those are the only engagement agreements produced for their matters: [redacted] (HLF_Freeway_0000546), [redacted] (0000736), and [redacted] (0000614). HLF litigated and settled two of those matters on Mr. Wilson's behalf. A fourth, [redacted] (0000490), is logged as Pending yet displays Mr. Wilson's signature. The Freeway agreement was produced twice, once as a DocuSign envelope with no certificate of completion (0000012–14) and once as a SignNow envelope (0000522–25). The DocuSign copy is the one Plaintiff filed with the Court (ECF No. 26-1).

These records are also responsive on their own terms. Every SignNow signature in the production was completed through [redacted], an email account associated with Mr. Wilson. Requests 4 through 6 call for documents sufficient to identify each person who accessed any such account, each instance of access with its date, IP address, device, and method, and each credential used. The platform's session records are those documents.

Please produce the following:

1. SignNow platform records for each SignNow document in the production, in native electronic form. This includes: the file as originally uploaded; every version or revision; all field and role metadata, including whether each signature field was assigned to a recipient or completed by the sender through a "Fill Out Now" field; the complete document history as maintained by SignNow, including field creation, link-click, authentication, viewing, signing, and completion events with actor, email, IP, and device information; all invitation and signing-session records for [redacted]; and the account setting governing the e-signature ID stamp. At a minimum, this request covers [redacted] (0000490), [redacted] (0000486), [redacted] (0000546), [redacted] (0000736), [redacted] (0000614), and [redacted] (0000522); the remaining Pending envelopes at 0000383, 391, 399, 439, 630, and 756; and every settlement statement in the production.

2. The SignNow files HLF already downloaded. The audit logs show that info@hlfirm.com downloaded nearly every envelope on August 22, 2026 to assemble this production. Please produce those files as downloaded.

3. The DocuSign record for envelope [redacted]: the certificate of completion and the full envelope history, including who created the envelope, when it was created, and each signer's email, IP address, and timestamp.

4. Native demand letters and transmittals. The demand letters were produced as images of word-processing documents. Please produce the native .docx files with metadata intact, including author, last-modified-by, and creation and modification dates. Please produce the transmittal emails as native .eml or .msg files with full headers.

5. Native spreadsheets and forensic data: the "Messages and Voicemails obtained from CFR4001-1.xlsx" workbook, ExportSummary.json, and the AXIOM portable case, with hash values, as detailed in the iCloud section below.

Producing these items should impose little burden. HLF downloaded the SignNow files a little over a month ago, and the remaining items are on HLF's own systems. Freeway has also subpoenaed airSlate and DocuSign for the platform

records themselves. Please confirm that HLF has preserved its SignNow and DocuSign accounts in full, consistent with the Court's August 19, 2026 preservation order.

*The iCloud collection and claim identification (Requests 4–7)*

HLF's production on the collection and review of Mr. Wilson's data stops in October 2024, before the collection took place. HLF produced the CFR engagement (HLF_Freeway_0000085–90), an email chain ending October 24, 2024 (0000015–81), and screenshots of the forensic report's title pages and folder tree (0001489–95). The acquisition took place on November 18, 2024, and the report was generated on November 23. Nothing from that period or after it has been produced.

The engagement documents show what is missing. The engagement describes a search "specific to keyword information that was provided by client" for messages from "specific cell phone number(s) within a defined date range." It also calls for "a report detailing the findings, including an overview of the forensic process, search methodology, and analysis results" (0000089). CFR instead performed a cloud acquisition of an entire Apple account, [redacted], containing 880,453 items (0001494), after HLF instructed CFR to collect "all texts and all voicemails" (0000027). Please produce the following:

1. The keyword list, phone numbers, and date range HLF provided to CFR under the engagement's scope of work, and any communication in which HLF changed the scope from a device image to a cloud acquisition of the full account.

2. The attachments to HLF's October 12 and October 15, 2024 emails to CFR, which HLF described as samples of the voicemails and texts at issue (0000024, 0000032). Those samples show what messages HLF already held before CFR did any work. They therefore identify who was performing claim-identification work for HLF, and when, under Request 7.

3. Communications with CFR after October 24, 2024 that identify the credentials transmitted; the authentication method used, including any two-factor codes; the delivery of the results; CFR's invoice; and the destruction of copies that the engagement requires (0000086, 0000029). Requests 5 and 6 call for these documents. HLF produced the full chain through October 24 without objection. It cannot draw the line at the date the collection began.

4. CFR's complete report, not just the three title and overview pages produced at 0001492–94, together with the full AXIOM portable case shown at 0001495: Report.html, ExportSummary.json, the chat preview report, and the attachments folder. These identify each access instance and its method under Request 5.

5. The native "Messages and Voicemails obtained from CFR4001-1.xlsx" workbook. The file produced at 0001488 is an index of file names from the export, not this workbook. The folder screenshot shows the workbook as a separate 15 MB file.

6. Hash values and chain-of-custody documentation for the acquisition and for every copy made from it.

7. The Ankura engagement referenced at [cite], and all communications with Ankura.

8. The identity of the account holder for [redacted], and the basis for HLF's warranty to CFR that it had "lawful possession" of and "authority" over that data (0000086, 0000089). Mr. Wilson's communications with HLF use a different address.

9. The name and role of each person who reviewed the collected data or identified claims from it, and whether any of those persons is a lawyer. This includes the individual identified as "Farideh," who signed the CFR engagement and arranged payment (0000015, 0000089). HLF's September 23 letter describes Farideh Heidarpour as a firm employee but provides no documentation. Under Request 7, please produce documents sufficient to show her employment or engagement with HLF during the relevant period, such as an employment agreement or tax records.

10. Records of any collection, export, or access to Mr. Wilson's account after November 18, 2024. Of the 207 distinct demand letters HLF produced, 155 concern messages sent after that date, so those claims did not come from the November 18 acquisition. Please identify their source and produce the records of it.

**Privilege log**

We have two initial concerns with HLF's September 23 privilege log. We raise them now without waiving any other objection to the log or to any entry on it, and we will address the log in detail separately.

First, the descriptions are boilerplate. The log uses five stock descriptions for all 7,152 entries. Nearly 4,000 entries were sent from the shared account heidarpourlawfirm@gmail.com, and the log does not say who sent them. Beyond the subject line, it does not describe the subject matter of any individual communication. That does not allow us to assess the claims, as Rule 45(e)(2)(A) requires.

Second, the log is incomplete. It runs from October 5, 2024 through May 20, 2026 and stops there, even though HLF's own production shows agreements and settlements executed through August 2026. The log lists roughly 670 unique communications between HLF and Mr. Wilson over nineteen months. As noted above, 155 of the demand letters concern messages Mr. Wilson received after the November 18, 2024 collection, and each of those claims required him to get the message to HLF somehow. The log does not reflect that volume. It shows only seven email threads that Mr. Wilson initiated. It also lists no communications with CFR, Ankura, defense counsel, or any settlement counterparty. Please confirm whether HLF contends that the log captures every communication between HLF and Mr. Wilson, and every communication with third parties, within the subpoena's scope. If it does not, please identify what was excluded and

why.

**Next steps**

Please respond in writing by end of day Tuesday, October 6, and produce the materials above by Friday, October 9. Where HLF contends a document does not exist, please say so expressly for each item. If HLF intends to stand on any objection, please let us know your availability to confer next week so we can raise any remaining disputes with Chief Judge McShane under his procedures. Freeway reserves all rights, including the right to raise additional deficiencies as our review continues.

Best,
James

---

**From:** Farag, Peter <pfarag@milbank.com>
**Date:** Wednesday, September 23, 2026 at 9:55 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>; James Ruley <jruley@wtlaw.com>; Rebecca Rhym <rrhym@wtlaw.com>; Jennipher Borey <jborey@wtlaw.com>
**Cc:** Katyal, Neal <nkatyal@milbank.com>; Laroche, Matthew <MLaroche@milbank.com>; Laskero, Izzy <ilaskero@milbank.com>; Omer, Sahar <somer@milbank.com>
**Subject:** In re: Subpoena to the Heidarpour Law Firm, PLLC, 6:26-mc-00830-MC (D. Or.)

[Warning – external]

Counsel,

Please see attached for HLF's privilege log in the above-captioned matter.

Relatedly, please see the attached correspondence regarding HLF's production of documents. The documents referenced in the attached correspondence have been loaded to a secure share file site (Kite Works) and are being produced subject to the interim protective order. If you haven't already, you will soon receive an invitation to access Kite Works.

The password to the zip file is: [redacted]

Best,
Peter

Peter Farag | Milbank | Associate
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5830
pfarag@milbank.com | milbank.com

======================================== IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor.
======================================== This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.