# Exhibit L

**From:** James Ruley
**To:** mcshane_crd@ord.uscourts.gov
**Cc:** Ryan Watstein; Timothy J. Fransen; Rebecca Rhym; Andrew Perrong; Farag, Peter; Laroche, Matthew; Laskero, Izzy; Katyal, Neal
**Subject:** [EXT] In re Subpoena to Heidarpour Law Firm, PLLC, No. 6:26-mc-00830-MC — Request for Telephone Conference re: Discovery Dispute
**Date:** Monday, November 9, 2026 11:33:12 PM
**Attachments:** RE- HLF-Freeway Joint Email to Judge McShane.eml.msg
11.3.26 - HLF & Freeway Joint Email to Judge McShane.docx

---

Dear Chambers:

Freeway Insurance Services of America, LLC ("Freeway") writes, as the Court directed, to present the parties' discovery disputes and request a telephone conference. Aug. 19, 2026 Hr'g Tr. 80:9–81:2. This was meant to be a joint submission with Non-party Heidarpour Law Firm, PLLC ("HLF"), but HLF has declined to participate.

That is despite HLF initiating this submission. On November 3, it circulated a draft joint email to the Court setting out its position, which is attached. Freeway sent its position, below, on November 6. HLF then declined to send the joint email. Instead, on November 9, it filed a brief asking the Court for relief on the same disputes. ECF No. 38. It filed that in response to Freeway's notice of new evidence, which like HLF's own previous notice (which Freeway didn't respond to) requested no relief. *See* ECF Nos. 33, 34.

When Freeway asked HLF for its final position so Freeway could submit the parties' dispute per the Court's designated procedure, HLF withdrew its November 3 draft and asked that this email say only the following:

> ***HLF's Position.*** Freeway disregarded the Court's procedures for discovery disputes by filing Friday's Notice, ECF No. 34. HLF's position on those disputes, including the third-party subpoenas, is set out in its filing of today, ECF No. 38. HLF respectfully requests the relief set forth in that filing and will make itself available at the Court's convenience.

We are attaching HLF's prior November 3 draft and the parties' email chain about this dispute for full disclosure.

Because HLF will not join, Freeway submits this dispute itself and requests a conference on its own. Freeway's position, as it stood when it last circulated it to HLF on Friday, follows. Freeway has also responded to HLF's filing. ECF No. 40.

**Freeway's Position:**

HLF, a third party, has not even appeared as counsel in this action. Yet it asks the Court to declare that "no further discovery" is warranted, just as discovery has begun to confirm what Freeway said: HLF, Wilson, and referral counsel used the Court's auspices to extract nearly $8 million in individual settlements through rampant ethics abuse and fraudulent claims. HLF even seeks to shut down subpoenas to third parties who are eager to cooperate because they too were harmed by its scheme.

Third-party HLF doesn't just seek to block subpoenas it lacks standing to challenge. It also demands action on an "urgent" timeline of its own making. Freeway had planned to bring all open disputes with HLF, Wilson, and referral counsel to the Court together by status report, as the Court directed. Aug. 19, 2026 Hr'g Tr. 80:9–81:2. HLF raised the vendor subpoenas on October 22, and Freeway gave its position the next day. HLF never answered. Eleven days later, it circulated this statement, which reaches all discovery. It did so the day after serving objections to the second subpoena and before the November 5 conferral on them. Then it pushed Freeway to respond immediately.

So this statement does not cover every open dispute, and Freeway will raise the rest in a separate email. Those include the protective order's use provision, which remains unresolved. Through it, HLF seeks to bar Freeway from using anything marked confidential outside this proceeding. They also include HLF's designation of nearly its entire production as confidential. That covers demand letters it sent to adversaries and documents it produced in *Robertson* without any protective order, which have sat on this Court's public docket since August 12. Wilson ECF No. 42-1. Once again, those designations are designed to keep material the public has a substantial interest in seeing off the public docket.

The Court has already decided that "robust" discovery should proceed and ordered HLF to preserve evidence on "all TCPA claims." Wilson has agreed to a deposition, and the Court said it would "certainly consider" a forensic device inspection. Tr. 78. Five days later, the Court rejected HLF's effort to view this case "in a vacuum," held the discovery relevant to "any future motion for sanctions against HLF," and contemplated HLF's deposition. ECF No. 28 at 6–7. The "very limited" discovery and "60 days" HLF quotes are what Freeway first proposed, expecting cooperation. Tr. 13, 41. The Court did not adopt that. It said instead that "there needs to be some robust discovery to determine exactly what is going on with the Heidarpour Law Firm and this litigation." Tr. 78:23–25.

And since then, neither HLF, Wilson, nor referral counsel has cooperated. Discovery has nevertheless shown what Freeway predicted and more. As detailed in Freeway's Notice of New Evidence, ECF No. 34 ("Notice"), HLF's records show about $8 million in individual settlements on Wilson's claims, roughly 96% to counsel and nothing to any class. *Id.* Part I. On one claim, counsel took [redacted] and Wilson [redacted]. *Id.* Counsel's take was 1,200 times the maximum statutory recovery. *Id.*

The records also tie the opt-in in *MAH Group* (consolidated with this case before Your Honor) to the IP address Wilson used to sign HLF's retainers. They show several other instances of fraud in Wilson's portfolio. *See id.* Part II.B. And the first vendor to respond to Freeway's subpoenas corroborates that fraud. Opt-ins with Wilson's and co-plaintiff Sara Taylor's numbers nearly doubled after they retained HLF. Then they fell back to baseline after Freeway's counsel raised fraud allegations and the two abandoned pending cases and stopped filing. *Id.* Part II.D.

Freeway learned all this even though HLF has not fully complied with the discovery this Court ordered. When the shoe was on the other foot, Wilson sought hundreds of thousands of pages from Freeway. *Id.* Part III. Now HLF touts its "2,000 pages," which are almost all form agreements and settlement papers, a

function of the nearly $8 million made off Wilson. *Id.* But HLF didn't produce what Freeway really cares about. For example, HLF's 7,152-entry log omits the communications showing how HLF obtained the Wilson claims that arose after its retention. *Id.* HLF still hasn't produced all the settlement agreements this Court ordered it to produce two months ago, including three that total seven figures. *Id.* Parts I, III. It made Freeway chase each settling defendant for the ones it did produce, though the agreements didn't require that. *Id.* Part III. It withheld at least 24 demands until Freeway found them. *Id.* And it still withholds an untold number of pre-suit demands sent by email (because it says an email demand isn't a "demand letter"). *Id.* It also withholds every response in which a defendant accused HLF of fraud or litigation abuse. *See id.* Part III.

Nor did Freeway ignore HLF's October 14 letter. That letter said much of what Freeway sought fell outside the first subpoena. *Id.* Freeway disagrees. But rather than fight about it, Freeway asked for those documents in a second subpoena, served partly to spare HLF a deposition, and asked on October 20 to confer. To eighteen of nineteen requests, HLF answered that it "will not" search for anything. *Id.* And it declined to confer request by request to see if anything could be narrowed. *Id.*

HLF's description of the second subpoena is also inaccurate. Eleven of its nineteen requests seek only documents "sufficient to" show discrete facts. *Id.* Its scope matches the requests the Court already enforced. And the communication details it seeks are the same ones a privilege log would disclose. ECF No. 28 at 3. Timesheets, which can be redacted, test the engagement letters' promise that fees were "based on the amount of time spent on the matter." Public documents have already proven that promise false. Wilson ECF No. 26-1 ¶ 7. *See* Notice Part I. Personnel and compensation records would show whether fees went to non-lawyers. That includes Farideh Heidarpour, a convicted felon, whom Wilson "mainly works with." ECF No. 28 at 6. And the "different law firm" is Legal Advocacy for Victims ("LAV"). Heidarpour helped start it, and HLF itself invoked it to defend Wilson's engagement letter. Notice Part I.

The third-party subpoenas, which many recipients have welcomed, are just as targeted. Not one recipient has objected, because each asks for the same simple items: data showing opt-ins with Wilson's and his two co-plaintiffs' numbers. Notice Part III. Freeway could have asked about dozens of HLF claimants and did not. *Id.* HLF claims no interest at all in the vendors' records. And the first respondent's records have already shown what Freeway predicted: opt-ins nearly doubling during the HLF relationship and then falling to baseline after the defendants cried fraud. *Id.* Part II.D.

The law-firm subpoenas seek the three referral firms' time records for the reason explained above. Those firms are no strangers to this Court. Paronich Law takes 60% of counsel's fees in this very case. Wilson ECF No. 26-1 ¶ 5. Paronich or Perrong represents Wilson in thirteen of the fourteen cases before this Court. Notice n.3. And Kaufman represents him in *PacifiCorp* and seventeen other cases. *Id.* All three thus far have refused to produce anything. *Id.* Part III. Freeway proposed that this Court resolve that dispute, but the firms refused. Yet HLF purports to seek relief on their behalf. Notice Part III.

It's the same story in every category. One set of rules applies when HLF and

referral counsel use class discovery to extract millions from admittedly innocent companies. Another applies when the tables are turned. *See id.*

The Court should (1) deny third-party HLF's request to hold in abeyance subpoenas to other, enthusiastic third parties; (2) direct HLF to respond to the second subpoena, logging anything withheld; (3) require HLF's deposition; (4) order Wilson's device inspection; and (5) set a schedule that requires this discovery be completed by January, with Freeway's sanctions motion due 30 days later.

* * *

Best,

James

**James Ruley**
WATSTEIN TEREPKA LLP
404-991-2684
jruley@wtlaw.com
www.wtlaw.com

75 14th St NE Suite 2600
Atlanta, GA 30309